[Civil Nos. 3220 and 3221. Filed September 17, 1932.]

[14 Pac. (2d) 472.]

JACOB BLAS ZAGAR, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, CASTLE DOME MINES, INCORPORATED, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, a Corporation, Respondents.

EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, Respondent.

480

Messrs. Mathews & De Wolf, for Petitioner.

Messrs. Frazier & Perry, for Respondent in Cause No. 3220.

Messrs. Frazier & Perry, for Petitioner.

Messrs. Mathews & De Wolf, for Respondent in Cause No. 3221.

ROSS, J.—The petitioner Zagar on October 21, 1927, while working for The Castle Dome Mines, Incorporated, was injured by an accident arising out of and in the course of his employment. Thereafter he filed with the Industrial Commission of Arizona a claim for compensation under the Workmen's Compensation Law, making parties thereto the employer and the insurance carrier, Employers' Liability Assurance Corporation, Limited.

A hearing on the application was had before the Industrial Commission, and, on May 19, 1928, the commission found that the petitioner had suffered "temporary disability" and awarded him compensation up to May 23, 1928, on that account in the sum of $756.24. The commission also found that he had suffered "permanent partial disability" and was entitled to compensation therefor in the sum of $95 per month for a period of twenty-five months, beginning

May 23, 1928, the $95 being 50 per centum of his monthly wage at the time of injury.

Thereafter, upon an application by petitioner for a rehearing, the award for permanent partial disability was, on May 31, 1928, enlarged to thirty months at $95 per month.

The insurance carrier has paid the awards and also hospital and medical expenses for the time fixed by law.

On June 13, 1931, the petitioner filed his petition with the commission in which he alleged his condition had grown very much worse and asked that the case be reopened and evidence taken as to his condition at that time and for an increase or re-arrangement of his compensation as for permanent total disability. After a very thorough investigation, the commission found the petitioner was "suffering from permanent disability entitling him to additional compensation therefor at the rate of $47.50 per month, from the date of said petition (June 13, 1931) during the life of said applicant."

The employer and the insurance carrier, as also the petitioner, were dissatisfied with this award and they all petitioned for a rehearing. Later the employer and the insurance carrier withdrew their petitions, and the petitioner's petition for rehearing was denied.

The petitioner and the insurance carrier, by separate petitions, have brought the last award here for review.

The petitioner contends that under the evidence the last award was not for as much as the law provides, and that, at all events, it should have run from the twenty-third day of November, 1930, the expiration period of the thirty months' allowance, instead of from June 13, 1931, the date of filing petition for rehearing.

The insurance carrier contends that, at the time of application for increase or re-arrangement of

award, limitation had run and that the award was not supported by the evidence.

The date from which an increase or re-arrangement of compensation may be allowed is fixed by the Compensation Act, section 1447, Revised Code of Arizona of 1928, as also the time within which an application or claim thereunder must be filed with the commission. That section reads as follows:

"§ 1447. Application for compensation or for increase; time limit. An employee entitled to compensation shall file with the commission his application therefor together with the certificate of the physician who attended him. The physician shall inform the injured employee of his rights under this article and shall lend all necessary assistance in making the application for compensation and such proof as required by the rules of the commission, without charge. Where death results from the injury, the parties entitled to compensation, or some one in their behalf, shall make application for the same to the commission, accompanied with proof of death and proof of relationship showing the parties to be entitled to compensation, certificate of attending physician, if any, and such other proof as required by the rules of the commission. Like application shall be made for an increase or rearrangement of compensation. No increase or rearrangement shall be operative for any period prior to application therefor, and any such increase or rearrangement shall be within the limits and classifications provided herein. No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right thereto accrued."

The formal application for increase or additional award was made, according to the record, on June 13, 1931, and that is the time, as we read the statute, from which the last award should date. *Doby* v. *Miami Trust Co.*, 39 Ariz. 228, 5 Pac. (2d) 187. "No increase or rearrangement shall be operative for any period prior to application therefor" is the

language of the law. With this conclusion the petitioner cannot very well disagree, but he contends he made application for increase before November 23, 1930. He makes this claim on the fact that almost from the date of the first award he and the commission were corresponding, he in his letters expressing dissatisfaction with the award and the commission in its letters assuring him that, at the expiration of the first award, upon his application, the matter could and would be re-adjusted if his condition was worse. We think the statute contemplates a formal application for increase or re-arrangement, and, since none was made until June 13, 1931, that is the proper date for the commencement of any new or different award.

The insurance carrier directs our attention to the last sentence of section 1447, *supra,* and insists that the petitioner filed his claim for increase or re-arrangement of compensation after limitation had run. That sentence must be construed in connection with other provisions of the compensation law. The rights growing out of an injury do not always inure to the workman. If he survives the injury the compensation goes to him, and, if he reports to his employer immediately, or gives a satisfactory excuse for not doing so, and submits to an examination as provided in section 1446, his application for compensation may be filed at any time within a year from the date of his injury. If he dies as a result of the injury, death benefits accrue to his dependents, who must file their claim within a year from the date of his death. This, we think, is a reasonable construction of the above sentence in section 1447. It results therefore that, if the applicant files his petition for compensation within a year after his injury, it confers judisdiction on the commission to hear and determine his right to compensation, and, upon the proper application and proof, power to increase or re-arrange the compensation or death benefits.

In the award of May 19th and in the amendment to that award on May 31, 1928, the commission reserved jurisdiction to alter, amend or rescind the award upon good cause. The commission being empowered to increase or re-arrange the compensation subsequent to the award necessarily is authorized upon proper application to order a rehearing, and upon such rehearing, if the facts justify it, grant an increase or order a re-arrangement of the award. This implies that such investigation is limited to an inquiry as to whether there has developed from the injury sustained new and undiscovered disabilities since the original award and which were not considered upon the granting of the original award. The disabilities shown by the evidence upon the original hearing were compensated by the original award. This follows as a natural consequence because the commission in making an award acts in a judicial capacity (*Doby* v. *Miami Trust Co., supra*), and its judgment upon the facts developed in the original hearing and award is *res judicata* upon such facts. An unreversed award must be treated as full compensation, and, unless subsequent thereto, new ailments and new disabilities flowing from the injury are shown the award is final.

The statutes of different jurisdictions are not alike on the question of increasing or rearranging compensation. This difference, however, is more a matter of the detail to be pursued than in the power or right to increase or re-arrange compensation upon subsequent developments. In Oregon the rule with its limitations is stated in *Grunnett* v. *State Industrial Acc. Com.*, 108 Or. 178, 215 Pac. 881, as follows:

"The right of compensation for aggravation of disability occurring or discovered after the rate of compensation has been established or compensation terminated is, as held in *Chebot* v. *State Industrial Acc. Com.*, 106 Or. 660, 212 Pac. 792, 795, 'of exactly the same dignity as' the 'right to receive compensa-

tion in the first instance.' This court, speaking through Mr. Chief Justice Burnett in *Iwanicki* v. *State Industrial Accident Commission,* 104 Or. 650, 658, 205 Pac. 990, 993 [29 A. L. R. 862], held:

" 'It is not contemplated by the statute that a new trial shall be granted and the case reopened before the Commission on the old application. Neither is it the rule that a modification or change with respect to former findings or orders is purely discretionary and beyond the right of appeal.'

"In the case of *Chebot* v. *State Industrial Accident Commission* [106 Or. 660], 212 Pac. 792, 795, a majority of this court, speaking through Mr. Justice McCourt, reiterated the doctrine of the Iwanicki Case, and ruled:

" 'The duty of the Commission to award compensation in a case of aggravated disability traceable to the injury upon which compensation has been allowed as the proximate cause thereof is not discretionary, and contains no elements of discretion not associated with its duty to award compensation in the first instance.'

"See, also, *Benson* v. *State Industrial Accident Commission,* 108 Or. 565, 215 Pac. 878.

"In the case of *Degidio* v. *State Industrial Accident Commission,* 105 Or. 642, 207 Pac. 176, 178, it was held:

" 'All questions arising out of the facts, circumstances, and conditions surrounding an injury for which claim for compensation is made, existing and known at the time of the decision upon the original application, are concluded by the final decision upon that application, unless an appeal is taken to the circuit court, and a different result obtained upon such appeal.'

"Aggravation of disability gives a right to compensation equal in dignity to the right of compensation which arises in the first instance; and the denial of either of such rights enables the workman to appeal to the circuit court."

But it is common knowledge that the results of physical injuries are often not determinable at the

'time they are received, and to require that they be then stated is to demand the performance of the impossible. The original award was not final in the sense that, regardless of the future physical condition of the workman, neither he nor the insurer should be permitted to show such physical change. For this reason the commission not only had the right, but it was its legal duty, to retain jurisdiction of the case for further action and award if the facts should so warrant. *Employers' Mut. Ins. Co.* v. *Industrial Commission,* 65 Colo. 283, 176 Pac..314.

The Workmen's Compensation Law does not specifically confer on the commission a continuing power over its awards, as is the case in compensation laws generally, but we think such power is impliedly conferred by section 1453, wherein it is stated that the commission shall not be bound in its investigations by formal rules of procedure other than in the act provided, but shall proceed in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of the act. Without a continuing power to alter, amend, or rescind its awards, according to the principles heretofore stated, the commission would certainly be greatly hampered in its efforts to carry out the spirit of the law and to do justice between the parties. The spirit of the act is that every employee injured, or in case of his death his dependents, in an accident arising out of and in the course of his employment, shall be indemnified therefor in the manner and amounts provided by the act, but that no employer or insurance carrier shall be mulcted for compensation except upon the terms and conditions of the act, and that they are entitled to protection against false and unfounded claims, as much as the workman is against technical defenses by the employer or insurance carrier. To effectuate this wholly laudable and desirable end, the commission must possess and exercise a con-

tinuing power to alter, amend, or rescind the award if the facts justify it. The compensation law is intended as a protection to both the employer and the employee.

That the evidence upon the application for an increase of compensation was ample to justify a change or alteration of the original award seems quite certain. Upon the first hearing the evidence was that the applicant was seriously and permanently injured in his spine and left leg, while upon the last hearing it showed there had developed from such injury a definite and positive Romberg and a general breakdown of his central nervous system. These last developments were not known at the original hearing and could not have been considered in making the first award.

The commission in its last award finds that the petitioner was suffering from a "permanent disability," whereas the finding in the original award was that he suffered a "permanent partial disability." These findings, in view of the law, are, to say the least, very confusing. Section 1438, Rev. Code 1928.

"There are four designated classes of disability for which compensation is payable. They are permanent total, permanent partial, temporary total and temporary partial." Section 400, 2 Schneider's Workmen's Compensation Law, p. 1332.

We have no such classification as permanent disability; it is either total or partial. If the commission intended its finding to be one of permanent total disability, the award of $47.50 per month is not what the law fixes as compensation. The statute, section 1438, subdivision (B), says: "In cases of total disability adjudged to be permanent, compensation of sixty-five per cent of the average monthly wage, during the life of the injured person" shall be awarded. On this basis, since the petitioner's monthly wage was $190, his award should have been

$123.50 during his life. On the other hand, if the finding that petitioner suffered ''permanent disability'' is to be construed as permanent partial disability, there is no finding by the commission upon which to base the compensation awarded. The injury suffered by petitioner is not one of those enumerated in section 1438, subdivision (B), for which a specific sum, for a definite number of months, is to be allowed the injured person. After the expiration of the thirty months' allowance of $95 per month for permanent partial disability, and dating from the time of filing petition for increase or re-arrangement of award, the commission should have proceeded to ascertain what compensation the petitioner was entitled to under (w) of subdivision (C) of section 1438, which reads as follows:

''(w) Where the injury causes partial disability for work, the employee shall receive, during such disability, compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, but the payments shall not continue after the disability ends, or death of the injured person, and in case the partial disability begins after a period of total disability the period of total disability shall be deducted from such total period of compensation.

''In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. Where there is a previous disability, as the loss of one eye, one hand, one foot, or any other previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

"The commission may adopt a schedule for rating permanent disability and reasonable and proper rules to carry out the provisions of this section."

We think the finding of the commission should have definitely designated whether petitioner's disability is total permanent, or partial permanent, and, if the latter, there should be a finding as to the percentage of disability to earn his former wages and the award calculated on that basis and in the manner provided by subdivision C (w), *supra*.

Because of insufficient findings to support the award, the award is hereby vacated and set aside, and the case is remanded with directions that the commission proceed, as herein indicated, to make proper findings and its award in accordance therewith.

McALISTER, C. J., and LOCKWOOD, J., concur.