[Civil No. 3515. Filed November 7, 1934.]

[37 Pac. (2d) 372.]

CARL SCHULTZ, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, and J. NEY MILES, HOWARD KEENER and L. C. HOLMES, Members of the Industrial Commission of Arizona, and CENTRAL AVENUE DAIRY, Defendant Employer, Respondents.

Mr. Burt H. Clingan, for Petitioner.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondent Industrial Commission.

LOCKWOOD, J.—Carl Schultz, hereinafter called petitioner, on the morning of August 21, 1932, and while in the employ of the Central Avenue Dairy, sustained serious physical injuries as the result of an automobile colliding with a milk wagon which he was driving. There is no question but that the injuries arose out of and in the due course of his employment. He was removed to a hospital for treatment, and placed on the compensation rolls by the Industrial Commission of Arizona, hereinafter called the commission, which was the insurance carrier for petitioner's employer. He was in the hospital for some time and thereafter under medical supervision until July 21, 1933, when the commission for the first time made an award in his case, the findings being as follows:

"1. That the above-named applicant, while employed in the State of Arizona by the above named defendant employer, who was insured against liability for compensation under said law by the above-named defendant insurance carrier, sustained an injury by accident arising out of and in the course of his said employment on August 21st, 1932, which injury caused temporary disability entitling said applicant to compensation therefor in the total sum of $965.06, all of which has been paid.

"2. Said injury caused also a permanent partial disability entitling said applicant to compensation therefor in the sum of $60.00 monthly for a period of five months.

"Award.

"Award is hereby made payable to said applicant by the above-named defendant insurance carrier as follows:

"1. The sum of $60.00 monthly for a period of 5 months, the first payment to be made August 16, 1933"

—and the award carried the usual provisions for an application for rehearing and for the commission retaining jurisdiction over the case. There is nothing in the record to show that any application for a rehearing upon this award was ever made, but on January 19, 1934, the commission, apparently of its own motion, ordered that the findings and award made on July 31st be amended to read as follows:

"1. That the above named applicant, while employed in the State of Arizona by the above named defendant employer, who was insured against liability for compensation under said law by the above named defendant insurance carrier, sustained an injury by accident arising out of and in the course of his said employment on August 21, 1932, which injury caused temporary disability entitling said applicant to compensation therefor all of which has been paid.

"2. Said injury caused also a permanent partial disability equal to a functional loss of 15% of the left leg, entitling said applicant to compensation therefor in the sum of $60.00 monthly for a period of 7½ months, of which 5 months has been paid.

"Award.

"Award is hereby made payable to said applicant by above named defendant insurance carrier as follows:

"1. The sum of $60.00 monthly for a period of 2½ months, the first payment to be made January 16, 1934."

Petitioner, being dissatisfied with the whole situation, in due time filed a formal petition for rehearing, which was held on the 14th day of March, 1934, petitioner being present in person and by counsel, and with such witnesses as he desired, and on the 18th day of April the commission affirmed the amended findings and award, and from this last order this appeal is taken.

The first thing which we have to consider is as to whether in this proceeding we can review only the amended award of January 19, 1934, or whether we can also examine into the condition of petitioner before July 21, 1933. It is the contention of the commission that no motion for rehearing of the award of July 21st having been made within the time required by its rules, and no appeal having been taken from that award within the statutory period, it has become *res judicata,* and its findings as to what was due petitioner as compensation for temporary total disability cannot be reviewed by us. It is the position of petitioner (1) that the award of January 19th, being in its terms an amended award, reopens the whole case for consideration, and (2) that even if it does not have this effect, that petitioner did express to the commission dissatisfaction with the award of July 21st within the twenty days allowed for a rehearing, and was assured by it that it would keep the matter open, and, if his condition did not improve, he would be given a rehearing on such award at a later time, and that this in effect was an extension by the commission of the time allowed by its rules in which a motion for rehearing could be made.

Proceedings before the commission do not require the same formalities as actions in courts of law, and we have always held that where it appears from the

record that a *bona fide* attempt has been made to comply with the statutes and the rules of the commission, we will look to the substance of the attempt and not to the form, but we think that in inquiring into what was done we must be bound by the record as it appears before us. If parties are permitted to add to or subtract from the record by *ex parte* statements, it will introduce such uncertainty into it that no reliance can be placed thereon. We are not unmindful of the argument of the petitioner to the effect that laymen who deal with the commission cannot be expected to know its rules and the formal method of procedure required by it, and that a grievous injustice may be done if the record cannot be impeached. This is doubtless true in some cases, but rules of procedure must be considered in the light of their general and not their particular effect, and we are of the opinion that on the whole a greater injustice would be done by permitting the right of oral impeachment of the records of the commission than by denying it. We are therefore compelled to assume that no motion for rehearing of, or appeal from, the award of July 21st was ever made. Under such circumstances, may we review the finding of the commission of the cessation of temporary total disability made therein? We have held in a number of cases that so far as the condition of the injured workman at and before the time an award is concerned, he may not, after the time for rehearing and appeal has elapsed, question the findings of the commission. *Doby* v. *Miami Trust Co.*, 39 Ariz. 228, 5 Pac. (2d) 187; *Zagar* v. *Industrial Commission*, 40 Ariz. 479, 14 Pac. (2d) 472, 474; *Kilpatrick* v. *Hotel Adams Co.*, 42 Ariz. 128, 22 Pac. (2d) 836; *Edens* v. *Dixon Construction Co.*, 42 Ariz. 519, 27 Pac. (2d) 1107; *Scott* v. *L. E. Dixon Construction Co.*, 42 Ariz.

525, 27 Pac. (2d) 1109. But, it is said, the commission of its own initiative reopened the whole matter by its award of January 19th, and petitioner may therefore review the whole case. We are of the opinion that petitioner has mistaken the effect of the amended award of January 19th.

In the case of *Zagar* v. *Industrial Commission, supra,* we referred to such a situation as follows:

"In the award of May 19th and in the amendment to that award on May 31, 1928, the commission reserved jurisdiction to alter, amend, or rescind the award upon good cause. The commission being empowered to increase or rearrange the compensation subsequent to the award necessarily is authorized upon proper application to order a rehearing, and upon such rehearing, if the facts justify it, grant an increase or order a rearrangement of the award. This implies that such investigation is limited to an inquiry as to whether there has developed from the injury sustained new and undiscovered disabilities since the original award and which were not considered upon the granting of the original award. The disabilities shown by the evidence upon the original hearing were compensated by the original award. This follows as a natural consequence because the commission in making an award acts in a judicial capacity (*Doby* v. *Miami Trust Co., supra*), and its judgment upon the facts developed in the original hearing and award is *res judicata* upon such facts. An unreversed award must be treated as full compensation, and, unless subsequent thereto, new ailments and new disabilities flowing from the injury are shown the award is final."

An award not appealed from is as binding upon the commission as it is upon the workman, and may not be further reviewed so far as the findings as to the compensation due to the workman at that date are concerned. But as was also said in the same case:

"But it is common knowledge that the results of physical injuries are often not determinable at the time they are received, and to require that they be then stated is to demand the performance of the impossible. The original award was not final in the sense that, regardless of the future physical condition of the workman, neither he nor the insurer should be permitted to show such physical change. For this reason the commission not only had the right, but it was its legal duty to retain jurisdiction of the case for further action and award if the facts should so warrant. *Employers' Mut. Ins. Co.* v. *Industrial Commission,* 65 Colo. 283, 176 Pac. 314."

We consider, therefore, the award of January 19th as being in substance a finding by the commission that it appeared to them from circumstances arising after July 21st that, due to such circumstances, the extent of the permanent disability of petitioner had increased, and that the award for such permanent disability should be increased accordingly.

The question for our consideration then is whether or not the evidence was sufficient to sustain the finding of the commission made January 19th in regard to the extent of the permanent disability as it appeared from the evidence before them on that date. That the petitioner suffered a permanent partial disability is not disputed, nor is the nature thereof questioned, it being admitted that it was compensable under subdivisions (o) and (u) of the partial disability schedule found in section 1438, Revised Code of 1928. These sections read as follows:

"(o) For the loss of a leg, fifty months; . . . (u) for the partial loss of use of a finger, toe, arm, hand, foot, leg, or partial loss of sight or hearing, fifty per cent. of the average monthly wage, during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, or complete loss of sight or hearing, which the partial loss of use thereof bears to the total loss

of use of such member or total loss of sight or hearing.''

The permanent injury of plaintiff consisted in an occlusion of a vein of the left leg, which to some extent destroyed its functional ability. The question then is as to what percentage such partial loss of use of the leg bore to a total loss thereof. To illustrate, if it appeared that the leg was 60 per cent. disabled, petitioner was entitled to compensation for thirty months at the rate of 50 per cent. of his average monthly wage. If the percentage of loss of use was greater than 60 per cent., the duration of compensation increased, while if it was less it would decrease, the percentage of the monthly wage remaining the same in all cases. The commission found in its award that the injury was ''equal to a functional loss of 15% of the left leg,'' which would entitle him to compensation for permanent partial disability for the term of seven and one-half months at the rate of 50 per cent. of his monthly wages.

The question then is, Does the record reasonably support the conclusion as to the extent of loss of use of the injured leg? The award of January 19th was made upon the written reports of various physicians and surgeons, while at the rehearing held on March 14th there were before the commission the reports of these medical authorities and the oral testimony of Dr. Goodrich, who was petitioner's attending physician, and of several lay witnesses. Apparently petitioner contends that it was not competent for the commission to consider the written reports of the other physicians. We have previously held that the Industrial Commission may consider hearsay testimony, and that its award may be based thereon. *Ocean Accident & Guarantee Corp.* v. *Industrial Commission,* 34 Ariz. 175, 269 Pac. 77. We think this is

particularly true of formal written reports made by physicians as a basis for an award. It is always competent for the petitioner, when an award is made upon such reports, if he desires to cross-examine the physicians, to request that they be subpoenaed for the rehearing, and, if he fails to do this, we think he cannot complain that their reports were insufficient to support an award, merely because they were hearsay.

We consider, therefore, all the testimony in regard to the extent of permanent disability, including the written reports of the physicians. Petitioner contends that the award was based on the erroneous idea that the compensation should be 15 per cent. of petitioner's loss of earning power. It is true that the four physicians who made the last formal report to the commission go very fully into the loss of earning power of petitioner in his then job, and state that it would probably average about 15 per cent. They state, however, in regard to the functional disability, as follows, ''Opinions as to disability ranged from 15% functional loss, as shown in the Medical Referee's report of December 16, 1933, to from 20% to 25% in the opinions of the other examiners,'' while the individual report of Dr. R. F. Palmer, made December 16, 1933, after going very fully into the manner in which the functional loss of power in the leg was tested, states specifically as follows:

''The original disability rating on this case was estimated at 10%, which was, however, entirely a personal opinion. In comparing the weight bearing and the strength, both functions show a greater loss than 10%. The loss of 15% in either weight bearing and/or strength represents the functional disability of the leg.''

Dr. Goodrich in his oral examination at the rehearing stated that at first he thought the functional dis-

ability was 50 per cent., but that he finally concluded it was about 25 per cent. The other two physicians apparently agreed on 15 per cent. Such being the case, we cannot say, as a matter of law, that the commission erred in accepting the lower percentage, and, if this be true, the award of January 19th for permanent partial disability was in accordance with the law. The award is affirmed.

ROSS, C. J. and McALISTER, J., concur.