211 P.2d 217

**STEWARD v. INDUSTRIAL COMMISSION et al.**

No. 5166.

Supreme Court of Arizona.

July 18, 1949.

On Rehearing Oct. 24, 1949.

Cox, Lockwood & Lockwood, L. J. Cox, Jr., of Phoenix, and Ira Schneier, of Tucson, for petitioner.

H. S. McCluskey, of Phoenix, Robert E. Yount, of Phoenix, of counsel, for respondents.

PHELPS, Justice.

William Erwin Steward (hereinafter called petitioner) sustained an injury on

162

March 16, 1945, while employed in Arizona as a truck driver by the Chambers Transfer and Storage Company. Application was duly made to the Industrial Commission of Arizona (hereinafter called the Commission) for compensation and on May 24, 1946, the commission made its findings and award which consisted among other things of a finding of the fact of injury of petitioner on March 16, 1945 arising out of and in the course of his employment and that his average monthly wage was $523.50; that he was entitled to compensation and that the evidence indicated that his physical condition was not stationary and fixed its award at a fixed amount then accrued and providing for compensation for temporary partial disability equal to 65% of the difference between $523.50 and the wages petitioner might be able to earn after May 15, 1946 to be paid in monthly payments and for accident benefits. Another finding and award was made on September 17, 1946 not material here.

An examination of the records disclose that on September 6, 1947, the commission made its finding that the petitioner had then fully recovered from his injury and that he should return to work, and made its award for the sum of $10,021.90 of which $9,273.46 had been paid, the balance of $748.44 to be payable forthwith together with accident benefits. No provisions were made for further payments. This had the effect of terminating the compensation of petitioner as of that date. On October 16, 1947, upon a rehearing the commission affirmed this award and ordered that petitioner take nothing by reason of his application for rehearing.

The commission thereafter granted another application for rehearing and conducted a further hearing on November 17, 1947, after which on January 28, 1948 it rescinded its findings and awards of September 6 and October 16, 1947, respectively, and made an award payable to the applicant for:

1. Accident benefits.

2. Sum of $9,273.46, all of which had been paid at that time, and for additional compensation for "temporary disability" from May 31, 1947 with the exception of the period of time for which petitioner was employed, said compensation to continue until further order of the commission. The commission in said order reserved the right to alter, amend or rescind said award for good cause. The award is silent as to whether the disability found was "temporary total" or "temporary partial". There is nothing in said findings or order to the effect that petitioner may require further surgery or that he should consult with any doctor relative thereto.

There does appear however in the records an inter-office communication signed by two members of the commission dated January 12, 1948 addressed to the claim's department directing it to "Rescind previous award, place the man (referring to petitioner) under the care of Dr. Greer and

authorize vocational rehabilitation training." Counsel for the commission seem to give it the same dignity as if it were incorporated in the findings and award of January 28, 1948.

On May 4, 1948 the commission issued an order, on its own motion, directing petitioner to appear before the commission or its referee "To show cause why a further compensation in your case should not be discontinued pending the submission by you of evidence on which the Industrial Commission may determine your loss of earning capacity between what you were able to earn prior to the injury and what you may be able to earn hereafter." The petitioner was further ordered to bring with him all records in his possession touching upon his earning capacity for the twelve months immediately prior thereto.

Pursuant to this order of the commission a hearing was conducted before the referee on May 11, 1948 but no evidence was elicited relative to a change in petitioner's physical condition subsequent to the award of January 28, 1948, nor was there any evidence adduced relative to his average monthly wages. Petitioner failed to produce at the hearing any records of his earnings during the twelve months immediately prior to his injury but did later furnish the commission with a statement from the Social Security Administration showing his earnings from January 1 to March 31, 1945. The records indicate that petitioner declined to cooperate with the commission and with the members of the medical board on many other occasions, or at least was grossly negligent in this respect.

According to the evidence at this last hearing petitioner had received two checks from the commission on February 3, 1948 for $1,143.99 and $381.41 respectively, or a total of $1,525.40 based on the award of January 28, 1948, and both the petitioner and the Chambers Transfer and Storage Company waived their right of rehearing and appeal therefrom. There is nothing in the record that throws any light whatever on how the commission arrived at these amounts and there is no order of the commission in the records directing said amounts to be paid, nor is there anything to intimate what period they covered.

An examination of the record fails to disclose any documentary or other evidence tending to show any change in the physical condition of petitioner subsequent to the award of January 28, 1948. However on July 30, 1948, for the first time the commission made a finding to the effect that petitioner's earning capacity should have been computed at not to exceed $316 per month instead of $523.50 per month and in said findings and award found that subsequent to April 15, 1948, there was no causal connection between petitioner's alleged disability and the alleged injury of March 16, 1945 or the alleged prior injuries of December 1, 1944 and February 20, 1945, and that the award of January 28, 1948, except

to the extent that the same had been paid was rescinded and it was ordered that petitioner would take nothing further by reason of said alleged injuries.

An application for rehearing on said findings and award was denied by the commission and the matter comes to this court by writ of certiorari.

Petitioner claims:

1. That the final award of July 30, 1948, was not supported by any evidence which had not been previously heard and determined by the commission and that petitioner was entitled under the law to have a formal hearing on the facts necessary to sustain said award.

2. That when a trier of facts has alternative methods of determining an ultimate fact the finding of fact based upon an approved legal method, the trier of fact at a later date cannot use another method in order to arrive at a different conclusion contrary to the prior determined fact, and that the finding by the commission that the average monthly earning capacity of petitioner was $523.50 was res judicata.

We are in accord with petitioner's first contention. The commission had the right, and it was its duty to retain jurisdiction over its award in this case and it had the power to change such award upon a proper showing. Zagar v. Industrial Commission, 40 Ariz. 479, 14 P.2d 472, 474. We said in that case: "The original award was not final in the sense that, regardless of the fu-

ture physical condition of the workman, neither he nor the insurer should be permitted to show such physical change. * * * The commission must possess and exercise a continuing power to alter, amend or rescind award if the facts justify it."

The commission may likewise correct its records to reflect the truth where a mistake has been made. Martin v. Industrial Commission, 63 Ariz. 273, 161 P.2d 921; Hamer v. Industrial Commission, 43 Ariz. 349, 31 P.2d 103.

But the findings and award of January 28, 1948, was binding both upon the commission and upon petitioner and the commission was without authority in law to amend, alter or rescind the same in the absence of mistake or of some new facts showing a change in the physical condition of petitioner subsequent to such award justifying such a change. Atkinson Co. v. Kinsey, 61 Ariz. 127, 144 P.2d 547. No change having been shown said order of July 30, 1948, is void.

For the guidance of the commission we, however, consider petitioner's second claim that the finding by the commission that his average monthly wage was $523.50 is res judicata and that the commission now has no authority to change said finding. We cannot agree with this contention. We are of the opinion that the petitioner's right to the monthly compensation fixed in said award vested in him upon the accrual date thereof, and that the commission cannot

alter its findings to operate retroactively so as to affect accrued compensation. Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995, 94 A.L.R. 328. But that it may change its findings so as to affect future earning capacity, where by the establishment of new or additional facts such change is justified or by showing that a mistake has been made in arriving at the amount thereof. Martin v. Industrial Commission, supra; Hamer v. Industrial Commission, supra.

In arriving at petitioner's average monthly earnings of $523.50 the commission relied upon the case of Jackson v. Del E. Webb Construction Co., 61 Ariz. 391. 149 P.2d 685, 686, in which we construed section 56-952, A.C.A.1939, and especially that portion thereof relating to the method of determining the average monthly wages of an employee who has not been continuously employed for a period of thirty days immediately preceding the injury or death of such employee. In that case we said that this portion of said section

"* * * affords the commission two alternative ways of determining the average monthly wage of an employee under such circumstances,

"(1) having regard to the previous wage of the injured employee, or

"(2) having regard to the previous wage of the other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality."

We feel that the situation created by that decision requires that we reconsider our explanation of section 56-952, supra, to ascertain if a more logical interpretation may not be ascribed to the language used therein.

In order to fully understand the intent of the legislature we quote section 56-952 verbatim: "Measure of compensation—Average monthly wage—Computation.—Every employee of any employer subject to the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case of his death, shall receive the compensation herein fixed, on the basis of average monthly wage at the time of injury. The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured. If the injured or killed employee has not been continuously employed for the period of thirty (30) days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident. If the employee is working under a contract by which he is guaranteed an amount per

diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract."

It is a cardinal principle of statutory construction if the language used is ambiguous, to ascertain if possible the intent of the legislature. This needs no citation of authority. We are of the opinion however that the above language is not ambiguous when given its universally accepted meaning.

The evident intent of the legislature in enacting this section was to establish a uniform and equitable basis upon which to predicate compensation to an employee entitled thereto. The ultimate fact sought to be ascertained was the average monthly wage of the employee as a basis of compensation which the statute says is an amount which "reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident." The specific provision is that the workman "shall receive the compensation herein fixed, on the basis of average monthly wage at the time of injury." There can be no doubt there-

fore that the "average monthly wage" is the basis fixed by the law for computation of compensation provided under the statute.

The specific inquiry here then is: What is meant by "average monthly wage?"

In Kennecott Copper Co. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839, 840, we quoted with approval the following language from State Road Commission v. Industrial Commission, 56 Utah 252, 190 P. 544-548: " * * * An average cannot be computed by means of a single factor. The ordinary meaning of the word implies that more than one factor must be considered. Webster defines the word, 'a mean proportion, medial sum or quantity, made out of unequal sums or quantities.' The Legislature evidently intended that the weekly wage (monthly wage here) should be computed with reference to some period of time, including the date of the injury. It intended that the wage at the time of the injury should be considered in connection with wages previously earned."

From the above definition of the word "average" we see conclusively that an "average monthly wage" may not be ascertained from wages earned in a single month and certainly cannot be ascertained from wages earned in a period of less than a month.

In the sentence immediately preceding the one here under consideration the legislature defined the term "monthly wage" to

mean "the average wage paid during and over the month in which such employee is killed or injured," meaning that the aggregate wage earned during the month would have to be divided by the number of days worked to get the average daily wage and then multiply said average by thirty, thus ascertaining the monthly wage.

This sentence like the one here under consideration can only apply where the employee has worked for a period of less than thirty days. If the injured employee had worked for a full month in the same employment in which he was working when injured there would be no necessity for ascertaining an "average wage" in order to determine the amount of the "monthly wage." The amount earned would speak for itself. Therefore when the legislature, after defining what it meant by a "monthly wage," proceeded to define an "average monthly wage" it did so fully cognizant of the meaning of the word "average" as used in that term and intended to give to it its full accepted meaning. It certainly intended that "average monthly wage" should be something different from its definition of a "monthly wage." Under the decision in the Jackson case, supra, the two are construed as being identical.

The legislature said that the "average monthly wage shall be such sum as * * reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident," and provides that in determining what constitutes an "average monthly wage" the commission must have "regard to the previous wage of the injured employee, or of other employees of the same or most similar class of work in the same or most similar employment in the same or neighboring locality."

In arriving at what reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time he is injured, other factors than the daily, weekly, or monthly wage or scale of wages must be considered. The opportunity afforded for work in that particular employment whether it be intermittent or seasonable or whether it is continuous the year round is an important factor to be considered.

It was said in the case of State Road Commission v. Industrial Commission, supra [56 Utah 252, 190 P. 548]: "* * * When we consider the fact that no person can possibly have an earning capacity in the particular employment greater than the opportunities afforded by that employment, we obtain a clearer conception of what is meant by 'earning capacity,' as the term is used in this class of cases. * * *"

The court in that case was considering the earning capacity of an intermittent employee. We quoted the above language with approval in Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P.2d 326, 112 A.L.R. 1089.

The injunction in section 56-952, supra, is that consideration must be given either

to the "previous wage" of the injured person or to the previous wage of other employees in the same or most similar class in the same or most similar employment in the same or neighboring locality, thus providing a method for determining what constitutes an average monthly wage under almost every conceivable situation.

First: By considering the "previous wage" of the injured person if he had been employed a length of time reasonably sufficient in that neighborhood in the same employment to enable the commission to determine what his average monthly wage would be;

Second: If he had just begun work in that employment in the neighborhood and an insufficient length of time had elapsed to enable the commission to ascertain his average monthly wage from his previous earnings then the commission may, under the clear intent of the legislative enactment determine said average monthly wage from the previous wage of other employees in the same or most similar class working in the same or most similar employment in that or in the neighboring locality. It will be further observed that the "average monthly wage" to be determined by the commission may be based on the previous wages of others not in the same class necessarily but in the most similar class, not in the same employment but in the most similar employment in the same or neighboring locality, thus indicating that it intended a liberal construction of this section rather than a restricted construction thereof.

We now consider that this court in the Jackson case, supra, was clearly in error in interpreting the language here under consideration to afford two alternative methods of computing compensation for an injured employee based upon divergent mathematical premises, where, by the use of one method the "average monthly wage" of the injured person would be two, three, or four times what it would be by the use of the other method, and in its failure to consider other factors including whether the employment was continuous or intermittent.

In the instant case the petitioner was found to have an average monthly wage of $523.50 whereas his record submitted to the commission showed that his average monthly wage as a truck driver from January 1, 1944 to October 31, 1944 was $234.23, and over a period of fifteen months immediately preceding said injury was $178.83. A small portion of the latter period, however, he was injured and unable to work. According to the statement of counsel for the commission the average monthly wage of truck drivers in the same or neighboring locality over that period was between $300 and $350 per month.

Let us further illustrate the absurdity to which the construction in the Jackson case leads. Let us take the case of a cantaloupe packer who makes $50 to $60 per day during the cantaloupe season, or for convenience, let us say that he makes $1,000 a month dur-

ing that period. He is what is known as a seasonal or intermittent worker and works approximately three to four months per year in this employment, but let us again for convenience assume that he makes $4,000 a year. If he has been employed less than thirty days continuously, immediately prior to his injury and is injured on the 29th day of his employment while packing cantaloupes, his compensation under the rule in the Jackson case, supra, would be based upon an average monthly wage of $1,000, whereas if he happened to be injured on the 31st day of his employment the average monthly wage upon which his compensation must be based would be $\frac{1}{12}$ of $4,000 or $350 per month. Brisendine v. Skousen Brothers, supra. The conclusion reached in the Jackson case, supra, therefore is illogical, unjust, and leads to absurdity.

It is a well established rule of statutory construction that courts will not interpret a statute so that the result will be absurd. Croaff v. Harris, 30 Ariz. 357, 247 P. 126; McBride v. Kerby, 32 Ariz. 515, 260 P. 435.

The holding of the court in the Jackson case, supra, that the term "previous wage" when considered together with a subsequent sentence reading "in the employment in which he is working at the time of the accident" was limited to mean "the wage of such employee immediately preceding the time of injury," is clearly unjustified. The latter clause was added to provide adequate compensation for an injured employee based upon his future earning capacity rather than on his past earning as in the case of an apprentice who had recently, just prior to his injury, been advanced to the classification of a journeyman, or where a skilled worker who, by reason of economic conditions, had been forced to work and was working as a common laborer for less than thirty days immediately prior to his injury, the basis of compensation would be based on the workman's capacity in the future in the employment in which he was then engaged. Brisendine v. Skousen Brothers, supra.

To construe "previous wage" to apply to the employment of only a few days (less than thirty days) prior to the injury of an employee ignores completely the recognized universal definition of the word "average" and gives to the term "monthly wage" and "average monthly wage" identically the same meaning which is clearly a "reductio ad absurdum" in that it gives to the commission the right to use at its discretion two alternative methods of establishing an "average monthly wage" leading to widely divergent results.

In the instant case using the method based upon the wages of the petitioner immediately prior to his injury his average monthly wage was determined to be $523.50 whereas had the commission used the other rule based upon the previous wages of others in the same or most similar class in the same or most similar employent in the same or neighboring locality the "average

monthly wage" would have been between $300 and $350. The commission says not in excess of $316. Had the petitioner in the instant case been working only a few hours each day immediately prior to his injury because of economic or other conditions, the method used by the commission would have resulted in his compensation being based on an "average monthly wage" far below what others in the similar or most smilar class in the same or most similar employment in the same or neighboring locality would have earned.

On the other hand if we give to the term "previous wage" its accepted or usual meaning without reading a limitation into the statute as was done in the Jackson case, supra, and if we ascribe to the word "average" the definition we approved in the Brisendine case, supra, each word and each sentence of section 56-952 becomes entirely clear and harmonious and the section as a whole is unambiguous.

We therefore expressly disapprove of the rule laid down in the Jackson case, supra, and hold that the average monthly wage must be ascertained as hereinabove indicated.

In view of the various irregularities and omissions in the records in this case and in view of the statement made by counsel for the commission in the course of his argument that there exists considerable confusion arising out of the decisions of this court concerning the powers and duties of the commission in compensation cases we feel that we may clarify some of these matters by making the following pronouncements:

We hold:

1.  That the commission retains jurisdiction of all compensation cases for the purpose of altering, amending, or rescinding its findings and awards at the instance of either the workman, the insurer or the employer upon showing a change in the physical condition of the workman justifying such action. Zagar v. Industrial Commission, supra.

2.  That the findings and award when made is as binding upon the commission as it is upon the workman and may not be altered, amended or rescinded without first establishing new facts justifying said change or where a mistake has been made in arriving at the amount of said award. Atkinson Co. v. Kinsey, supra.

3.  That it may correct its records to reflect the truth where it is apparent that a mistake has been made. If the mistake consists merely of a typographical or clerical error the correction may be made without notice, by an order nunc pro tunc, otherwise the correction may be made only upon notice and hearing accorded to become effective on the date it was made. Martin v. Industrial Commission, supra.

4.  Where a finding and award is made upon temporary or permanent disability the findings and award must state specifically whether the disability is total or partial, the

award of January 28, 1948 does not do this. Zagar v. Industrial Commission, supra.

5. The commission has the power to temporarily suspend compensation where the workman refuses to cooperate or neglects to comply with the reasonable requirements of the commission directing him to pursue some particular course of action recommended by the medical board, designed for his benefit. But upon his compliance therewith said compensation must be restored if the suspension is based solely upon such failure or refusal of said workman to comply with the directions of the commission. Phelps Dodge Corporation v. Industrial Commission, 46 Ariz. 162, 49 P. 2d 391; McFadden v. Six Companies, Inc., 46 Ariz. 195, 49 P.2d 1001.

6. That said order or direction, to be binding upon the workman must be made a part of said findings and award or issued as an amendment thereto.

7. That the interoffice communications and directions as shown in this record are not binding upon the workman even upon notice.

8. We hold further that in the instant case the commission was without authority to change its findings and award as there was no evidence submitted subsequent to its finding and award of January 28, 1948 showing a change in the physical condition of petitioner.

9. We further hold that the award based upon said average monthly wage of $523.50 became vested in petitioner upon the accrual date thereof and that the commission is without authority to alter said findings to operate retroactively. Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995, 94 A.L.R. 328.

10. We hold, however, that the commission may change its findings as to earning capacity of an employee where by the establishment of new or additional fact such change is justified, or by a showing that a mistake has been made in arriving at the amount thereof, where the injured person is given an opportunity to be heard. Said amendment to only be effective prospectively. Martin v. Industrial Commission, supra; Hamer v. Industrial Commission, supra.

It is ordered that the award be set aside.

LaPRADE, C. J., and UDALL and DE CONCINI, JJ., concurring.

Due to illness STANFORD, J., did not participate.

PHELPS, Justice.

On a motion for rehearing filed by the Industrial Commission it pointed out the fact that in our original decision in this case we restricted the power of the commission to alter, amend or rescind its findings and awards to cases where it was shown that a change in the physical condition of the injured workman had taken place subsequent to such findings and award

and urged that it should be broadened to include a change in the earning capacity of such workman. We agreed with the position taken by the commission and granted the motion.

We now are of the opinion that in our desire to correct an injustice arising out of the findings and award of the commission which was predicated upon the holding in the case of Jackson v. Del E. Webb Construction Co., 61 Ariz. 391, 149 P.2d 685, the court perhaps extended the rule laid down in the case of Martin v. Industrial Commission, 63 Ariz. 273, 161 P.2d 921, which we now wish to correct. We believe it desirable to rewrite the opinion in its entirety except the statement of facts in the original decision which we hereby adopt.

Petitioner claims:

1. That the final award of July 30, 1948, was not supported by any evidence which had not been previously heard and determined by the commission and that petitioner was entitled under the law to have a formal hearing on the facts necessary to sustain said award.

2. That when a trier of facts has alternative methods of determining an ultimate fact, the finding of fact based upon an approved legal method, the trier of fact at a later date cannot use another method in order to arrive at a different conclusion contrary to the prior determined fact and that the finding by the commission that the average monthly wage of petitioner was $523.50 was res judicata.

We are in accord with petitioner's first contention. The commission had the right and it was its duty to retain jurisdiction over its award in this case and it had the power to change such award upon a proper showing. Zagar v. Industrial Commission, 40 Ariz. 479, 14 P.2d 472, 474. The court said in that case: "The original award was not final in the sense that, regardless of the future physical condition of the workman, neither he nor the insurer should be permitted to show such physical change. * * * The commission must possess and exercise a continuing power to alter, amend, or rescind the award if the facts justify it."

The court held in the case of Martin v. Industrial Commission, supra, and in Hamer v. Industrial Commission, 43 Ariz. 349, 31 P.2d 103, that the commission may correct its records to reflect the truth where a mistake has been made.

In the case of Schultz v. Industrial Commission, 44 Ariz. 357, 37 P.2d 372, 374, and in Atkinson Co. v. Kinsey, 61 Ariz. 127, 144 P.2d 547, the court held that: "An award not appealed from is as binding upon the commission as it is upon the workman, and may not be further reviewed so far as the findings as to the compensation due to the workman at that date are concerned."

It will be noted that no exceptions are made to the rule there laid down. The cases of Stephens v. Miami Mining Co., 59 Ariz. 528, 130 P.2d 507; Brown v. Industrial

Commission, 48 Ariz. 161, 59 P.2d 323; Harambasic v. Barrett & Hilp & Macco Corp., et al., 58 Ariz. 319, 119 P.2d 932; Scott v. L. E. Dixon Co., 42 Ariz. 525, 27 P.2d 1109 hold that such findings and awards are res judicata.

The court said in the Zagar case, supra, that upon a showing of a change in the physical condition of the workman subsequent to the findings and award of the commission it had authority to alter, amend or rescind such findings and award. Stephens v. Miami Copper Co., supra.

In the case of Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396 and in Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160, the court stated that it is not the percentage of functional disability of an injured workman that furnishes the sole basis of his compensation under our law, but other factors must be considered, and that it is the loss in his earning capacity that fixes the measure of his compensation.

It follows, therefore, if it is shown that there has been a change in the physical condition of an injured workman arising out of said injury subsequent to the findings and award of the commission directly resulting in a reduction or increase in his earning capacity or if the earning capacity of the injured workman has been reduced as a proximate result of his injuries or if his earning capacity has been increased subsequent to said findings and award, the commission has jurisdiction to alter, amend or rescind said findings and award as the facts

may justify. No change of any kind having been shown in this case subsequent to said findings and award, the commission's order of July 30, 1948, is void.

In the light of the foregoing rule we now proceed on our own motion to a reconsideration of the question of res judicata raised by petitioner's second proposition of law. He claims that the finding by the commission that his average monthly wage on January 28, 1948, was $523.50 is res judicata.

We have now reached the conclusion that regardless of the consequent unjust depletion of the insurance fund which the commission holds in trust for the benefit of all injured workmen and other resultant injustices, petitioner's position must be sustained unless we depart from the rule laid down in the decisions above cited on the question of res judicata. It is a well established principle that judicial construction of a statute, so long as it is unreversed, is as much a part of the statute as if it had been written into it originally. Roos v. City of Mankato, et al., 199 Minn. 284, 271 N.W. 582 at 584 (Citing cases). At the time the findings and award were made by the commission in this case the rule announced in the Jackson case, supra, was a part of section 56-952. As such it authorized the use of the formula employed by the commission in finding as an ultimate fact that petitioner's average monthly wage was $523.50, and under our decisions is binding both upon the commission and the

petitioner. The fact that an alternative method of finding an average monthly wage was also authorized under the law, and the fact that the formula used was clearly erroneous as we now interpret that section of the law, does not alter the situation. The finding as to the compensation due to the workman at that date which includes the finding of his average monthly wage may not be further reviewed. Schultz v. Industrial Commission, supra.

In our original opinion we followed the rule laid down in the Martin case, supra, to the effect that the finding was based upon a mutual mistake of fact of the parties. From a searching review of the records in this case we have come to the conclusion that we cannot logically say that the commission made a mistake in finding the average monthly wage of petitioner to be $523.50. In fact it was not a mistake. It was ascertained by applying one of the formulas then authorized by law. It represents the correct amount the commission desired to establish. Otherwise it would have used the alternative formula then authorized by law.

The petitioner gave the commission correct information as to the amount of his hourly wage immediately prior to his injury and the average number of hours he worked per day. This is the extent of his participation in arriving at the amount of his average monthly wage, therefore, it cannot be said that he made any mistake with respect thereto.

The great weight of authority is to the effect that a mutual mistake is one in which both parties participating be each laboring under the same misconception. Fields v. Cornett, 254 Ky. 35, 70 S.W.2d 954. It must be shared by both parties. National Reserve Insurance Co. of Illinois v. Scudder, 9 Cir., 71 F.2d 884, 886; Paine-Fishburn Granite Co. v. Reynoldson, 115 Neb. 520, 213 N.W. 750, and must be established by clear and convincing proof. Christner v. McKay, 77 Okl. 116, 187 P. 207, 208; Vol. 27 Words and Phrases, Perm. Ed., Mutual Mistake, page 954, et seq. The conclusion is irresistible that the amount fixed by the commission as the average monthly wage of petitioner is not the result of a mutual mistake. In fact it is not the result of a mistake of either of the parties. Therefore our statement in the original opinion to the effect that the commission's findings as to the average monthly wage of petitioner is not res judicata and that it may change the same by showing a mistake has been made in arriving at said amount under the authority of Martin v. Industrial Commission, supra, was in error.

Whether the rule announced in the Martin case, supra, can be sustained in the absence of legislative authority is subject to grave doubt. In any event the rule is not applicable to the facts in this case.

In the Jackson case, supra, the court construed section 56-952, A.C.A.1939, and especially that portion thereof relating to

the method of determining the average monthly wage of an employee who had not been continuously employed for a period of thirty days immediately preceding the injury or death of such employee, to provide two methods of arriving at the average monthly wage of such employee. Specifically the holding was that this portion of said section [61 Ariz. 391, 149 P.2d 686]:

"* * * affords the commission two alternative ways of determining the average monthly wage of an employee under such circumstances,

"(1) having regard to the previous wage of the injured employee, or

"(2) having regard to the previous wage of the other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality."

We feel that the situation created by that decision requires that we reconsider our explanation of section 56-952, supra, to ascertain if a more logical interpretation may not be ascribed to the language used therein.

In order to fully understand the intent of the legislature we quote section 56-952 verbatim: "Measure of compensation—Average monthly wage—Computation—Every employee of any employer subject to the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case

of his death, shall receive the compensation herein fixed, on the basis of average monthly wage at the time of injury. The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured. If the injured or killed employee has not been continuously employed for the period of thirty (30) days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident. If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract."

It is a cardinal principle of statutory construction if the language used is

ambiguous, to ascertain if possible the intent of the legislature. This needs no citation of authority. We are of the opinion however that the above language is not ambiguous when given its universally accepted meaning.

The evident intent of the legislature in enacting this section was to establish a uniform and equitable basis upon which to predicate compensation to an employee entitled thereto. The ultimate fact sought to be ascertained was the average monthly wage of the employee as a basis of compensation which the statute says is an amount which "reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident." The specific provision is that the workman "shall receive the compensation herein fixed, on the basis of average monthly wage at the time of the injury." There can be no doubt therefore that the "average monthly wage" is the basis fixed by the law for computation of compensation provided under the statute.

The specific inquiry here then is: What is meant by "average monthly wage"?

In Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839, 840, we quoted with approval the following language from State Road Commission v. Industrial Commission, 56 Utah 252, 190 P. 544-548: "* * * An average cannot be computed by means of a single factor. The ordinary meaning of the word implies that more than one factor must be considered. Webster defines the word, 'A mean proportion, medial sum or quantity, made out of unequal sums or quantities.' The Legislature evidently intended that the weekly wage (monthly wage here) should be computed with reference to some period of time, including the date of the injury. It intended that the wage at the time of the injury should be considered in connection with wages previously earned. * * *"

From the above definition of the word "average" we see conclusively that an "average monthly wage" may not be ascertained from wages earned in a single month and certainly cannot be ascertained from wages earned in a period of less than a month.

In the sentence immediately preceding the one here under consideration the legislature defined the term "monthly wage" to mean "the average wage paid during and over the month in which such employee is killed or injured," meaning that the aggregate wage earned during the month immediately preceding his injury would have to be divided by the number of days actually worked to get the average daily wage and then multiply said average by the number of days he would ordinarily work per month, thus ascertaining the monthly wage.

This sentence like the one here under consideration can only apply where the employee has worked for a period of

less than thirty days. If the injured employee had worked for a full month in the same employment in which he was working when injured there would be no necessity for ascertaining an "average daily wage" in order to determine the amount of the "monthly wage." The amount earned would speak for itself. Therefore when the legislature, after defining what it meant by a "monthly wage," proceeded to define an "average monthly wage" it did so fully cognizant of the meaning of the word "average" as used in that term and intended to give to it its full accepted meaning. It certainly intended that "average monthly wage" should be something different from its definition of a "monthly wage." Under the decision in the Jackson case, supra, the two are construed as being identical.

The legislature said that the "average monthly wage shall be such sum as * * reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident," and provides that in determining what constitutes an "average monthly wage" the commission must have "regard to the previous wage of the injured employee or of other employees of the same or most similar class of work in the same or most similar employment in the same or neighboring locality."

In arriving at what reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time he is injured, other factors than the daily, weekly, or monthly wage or scale of wages must be considered. The opportunity afforded for work in that particular employment whether it be intermittent or seasonal or whether it is continuous the year round is an important factor to be considered.

It was said in the case of State Road Commission v. Industrial Commission, supra [56 Utah 252, 190 P. 548]: "* * * When we consider the fact that no person can possibly have an earning capacity in the particular employment greater than the opportunities afforded by that employment, we obtain a clearer conception of what is meant by 'earning capacity,' as the term is used in this class of cases. * * *"

The court in that case was considering the earning capacity of an intermittent employee. We quoted the above language with approval in Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P.2d 326, 112 A.L.R. 1089.

The injunction in section 56-952, supra, is that consideration must be given either to the "previous wage" of the injured person or to the previous wage of other employees in the same or most similar class in the same or most similar employment in the same or neighboring locality, thus providing a method for determining what constitutes an average monthly wage under almost every conceivable situation.

First: By considering the "previous wage" of the injured person if he had been employed a length of time reasonably sufficient in that neighborhood in the same employment to enable the commission to determine what his average monthly wage would be;

Second: If he had just begun work in that employment in the neighborhood and an insufficient length of time had elapsed to enable the commission to ascertain his average monthly wage from his previous earnings then the commission may, under the clear intent of the legislative enactment determine said average monthly wage from the previous wage of other employees in the same or most similar class working in the same or most similar employment in that or in the neighboring locality. It will be further observed that the "average monthly wage" to be determined by the commission may be based on the previous wages of others not in the same class necessarily but in the most similar class, not in the same employment but in the most similar employment in the same or neighboring locality, thus indicating that it intended a liberal construction of this section rather than a restricted construction thereof.

We now consider that this court in the Jackson case, supra, was clearly in error in interpreting the language here under consideration to afford two alternative methods of computing compensation for an injured employee based upon divergent mathematical premises, where, by the use of one method the "average monthly wage" of the injured person would be two or three times what it would be by the use of the other method, and in its failure to consider other factors including whether the employment was continuous or intermittent.

In the instant case the petitioner was found to have an average monthly wage of $523.50 whereas his record submitted to the commission showed that his average monthly wage as a truck driver from January 1, 1944 to October 31, 1944 was $234.23, and over a period of fifteen months immediately preceding said injury was $178.83. A small portion of the latter period, however, he was injured and unable to work. According to the statement of counsel for the commission the average monthly wage of truck drivers in the same or neighboring locality over that period was between $300 and $350 per month.

Let us further illustrate the absurdity to which the construction in the Jackson case leads. Let us take the case of a cantaloupe packer who make $50 to $60 per day during the cantaloupe season, or for convenience, let us say that he makes $1,000 a month during that period. He is what is known as a seasonal or intermittent worker and works approximately three to four months per year in this employment, but let us again for convenience assume that he makes $4,000 a year. If he has been employed less than a thirty day period immediately prior to his injury and is injured on the 29th day of his employment while

packing cantaloupes, his compensation under the rule in the Jackson case, supra, would be based upon an average monthly wage of $1,000, whereas if he happened to be injured in any thirty day period of his employment subsequent thereto the average monthly wage upon which his compensation must be based would be ½ of $4,000 or $350 per month. Brisendine v. Skousen Brothers, supra. The conclusion reached in the Jackson case, supra, therefore is illogical, unjust, and leads to absurdity.

It is a well established rule of statutory construction that courts will not interpret a statute so that the result will be absurd. Croaff v. Harris, 30 Ariz. 357, 247 P. 126; McBride v. Kerby, 32 Ariz. 515, 260 P. 435.

The holding of the court in the Jackson case, supra [61 Ariz. 391, 149 P.2d 686], that the term "previous wage" when considered together with a subsequent sentence reading "in the employment in which he is working at the time of the accident" was limited to mean "the wage of such employee immediately preceding the time of injury", is clearly unjustified. The latter clause was added to provide adequate compensation for an injured employee based upon his future earning capacity rather than on his past earning as in the case of an apprentice who had recently, just prior to his injury, been advanced to the classification of a journeyman, or where a skilled worker who, by reason of economic conditions, had been forced to work and was working as a common laborer for less than thirty days immediately prior to his injury, the basis of compensation would be based on the workman's capacity in the future in the employment in which he was then engaged. Brisendine v. Skousen Brothers, supra.

To construe "previous wage" to apply to the employment of only a few days (less than thirty days) prior to the injury of an employee ignores completely the recognized universal definition of the word "average" and gives to the term "monthly wage" and "average monthly wage" identically the same meaning which is clearly a "reductio ad absurdum" in that it gives to the commission the right to use at its discretion two alternative methods of establishing an "average monthly wage" leading to widely divergent results.

In the instant case using the method based upon the wages of the petitioner immediately prior to his injury his average monthly wage was determined to be $523.50 whereas had the commission used the other rule based upon the previous wages of others in the same or most similar class in the same or most similar employment in the same or neighboring locality the "average monthly wage" would have been between $300 and $350.

On the other hand if we give to the term "previous wage" its accepted or usual meaning without reading a limitation into the statute as was done in the Jackson case, supra, and if we ascribe to the word "average" the definition we approved in the Brisendine case, supra, each word and

sentence of section 56-952 becomes entirely clear and harmonious and the section as a whole is unambiguous.

We therefore expressly disapprove the rule laid down in the Jackson case, supra, and hold that the average monthly wage must be ascertained as hereinabove indicated.

In view of the various irregularities and omissions in the records in this case and in view of the statement made by counsel for the commission in the course of his argument that there exists considerable confusion arising out of the decisions of this court concerning the powers and duties of the commission in compensation cases we feel that we may clarify some of these matters by making the following pronouncements:

We hold:

■ 1. That the commission retains jurisdiction of all compensation cases for the purpose of altering, amending, or rescinding its findings and awards at the instance of either the workman, the insurer or the employer (a) upon showing a change in the physical condition of the workman subsequent to said findings and award arising out of said injury resulting in the reduction or increase of his earning capacity; (b) upon a showing of a reduction in the earning capacity of the workman arising out of said injury where there is no change in his physical condition, subsequent to said findings and award; (c) upon a showing that

his earning capacity has increased subsequent to said findings and award.

■ 2. That the findings and award when made is as binding upon the commission as it is upon the workman and may not be altered, amended or rescinded without first establishing new facts justifying said change. Zagar v. Industrial Commission and Atkinson Co. v. Kinsey, supra. No mistake of fact is present in the instant case and therefore neither the rule laid down in Hamer v. Industrial Commission or Martin v. Industrial Commission, supra, is applicable.

■ 3. That it may correct its records to reflect the truth where it is apparent that a mistake has been made. If the mistake consists merely of a typographical or clerical error the correction may be made without notice, by an order nunc pro tunc. Hamer v. Industrial Commission, supra.

■ 4. Where a finding and award is made upon temporary or permanent disability the findings and award must state specifically whether the disability is total or partial (the award of January 28, 1948 does not do this). Zagar v. Industrial Commission, supra.

■ 5. The commission has the power to temporarily suspend compensation where the workman refuses to cooperate or neglects to comply with the reasonable requirements of the commission directing him to pursue some particular course of action recommended by the medical board, designed for his benefit. But upon his compli-

ance therewith said compensation must be restored if the suspension is based solely upon such failure or refusal of said workman to comply with the directions of the commission. Phelps Dodge Corporation v. Industrial Commission, 46 Ariz. 162, 49 P. 2d 391; McFadden v. Six Companies, Inc., 46 Ariz. 195, 49 P.2d 1001.

6. That said order or direction, to be binding upon the workman must be made a part of said findings and award or issued as an amendment thereto.

7. That the interoffice communications and directions as shown in this record are not binding upon the workman even upon notice.

8. We hold further that in the instant case the commission was without authority to change its finding and award as there was no evidence submitted subsequent to its findings and award of January 28, 1948, showing a change either in the physical condition or in the earning capacity of petitioner had taken place subsequent to said date.

We further hold that the award based upon said average monthly wage of $523.50 is res judicata and that the commission is without authority to alter said findings. Stephens v. Miami Copper Co., supra.

It is ordered that the award be set aside.

LaPRADE, C. J., and UDALL, STANFORD and DeCONCINI, JJ., concur.