[Civil No. 3431. Filed April 25, 1934.]

[31 Pac. (2d) 891.]

ALBERT H. HOWE, Petitioner, v. WALTER DOUGLAS, Defendant Employer; THE IN-DUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, Respondents.

Messrs. Mathews & De Wolf, for Petitioner.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondent Commission.

ROSS, C. J.—On October 23, 1931, Albert H. Howe, petitioner, was working as a farm-hand at $3 per day for Walter Douglas, who was insured against liability in the State Compensation Fund. He was cutting corn with a knife, and accidentally cut his leg between the knee and ankle. Immediately after the injury, petitioner was sent to Dr. J. M. Greer, who sutured the wound and administered antitetanic serum to prevent lockjaw. The wound soon healed, and at no time prevented Howe from working. But in about five days after he was inoculated with the serum a red itchy eruption began to form on his left chest, where the serum was injected, and later spread to all parts of his body, including his face and eyelids, becoming scaly and oozing. Petitioner continued to work for some ten or twelve days, but owing to the itching and annoyance the rash was causing him he finally ceased to work, and at the hearing on June 1, 1933, was not well.

On February 9, 1932, the Industrial Commission found that his injury was compensable, and awarded him $62.63. This award was amended February 11, 1932, by adding thereto $22.77, making the compensation $85.40 for the months of December (1931), January, and February (1932).

On December 14, 1931, at the suggestion of Dr. Greer, petitioner went to Dr. T. T. Clohessy, a dermatologist, who examined him and began a course of treatment. He remained at his home during the daytime, alone, and under the care of his wife at night. According to the doctor's report, he made marked improvement for quite a little while. Owing

to the severe itching, he either would not or could not keep from scratching and rubbing himself, thus irritating his skin and aggravating the disease.

On February 6, 1932, Dr. Clohessy reported to the commission as follows:

"Contrary to directions, no paste as protection to diseased skin, no bandages on arms or forehead as directed. Numbers of excoriations on injured skin from scratching and rubbing. Excuse for not being home was he did not expect me. Fifteen minutes later, excuse for not having protective paste on or bandages was he wanted me to see the skin exposed. Recurrence of eruption, though milder, on all parts, even arms and neck, which were in appearance normal five days previously. It is my opinion this man is making no great effort to help in his recovery."

About this time the doctor and one of the commission's investigators tried to get petitioner to go to a hospital so that he might have proper and constant care. He refused to go, and his wife did not wish him to go. This he, in a rather negative way, disputes. On February 9, 1932, the commission's claims department wrote petitioner as follows:

"Inasmuch as you have very definitely refused to be placed in the hospital for treatment, and further in view of the fact that you absolutely refuse to comply with the instructions of your physician, we are closing our file in your case and will assume no further liability."

No further proceedings were taken or had or requested until on or about February 18, 1933, when petitioner made formal, oral request for a reopening and rehearing of his claim for compensation. The commission thereupon caused petitioner to be examined by five well-known local doctors, who reported to the commission the results of their diagnoses. Subsequently, on May 8, 1933, petitioner filed

a formal written application to the commission for a reopening and a rehearing of his claim and for an increase of compensation, alleging as a reason therefor:

"That about the month of May or June, 1932, applicant became totally blind in the right eye and practically blind in his left eye, due solely to the injury by him sustained as herein alleged in consequence of the injection of said serum into the body of applicant and the skin disease produced thereby, the all of which caused, without any intervening cause, the skin disease and blindness of applicant. . . .

"That when applicant was discharged and compensation ceased and when medical attention was no longer provided by the Industrial Commission of Arizona for injuries caused by said accident and injury on October 23, 1931, he was left with his face and other portions of his body so infected with skin disease and rash as to wholly prevent him from performing his work. That said skin disease or rash infection was caused solely and proximately by said accident and injuries received and the serum injected. That said skin disease and rash has increased in intensity and progressed in severity so that solely in consequence thereof applicant during the fore part of 1932 lost totally the sight of his right eye and practically the sight of his left eye. That the eye trouble developed in or about the month of May, 1932. That applicant caused an operation to be performed upon his right eye by Dr. H. L. Franklin, which has greatly improved the same and applicant is gradually regaining a part of the vision thereof. At this time applicant is almost totally blind in his left eye and applicant is advised that he is in need of and would be greatly benefited by a like operation to his left eye as was performed by Dr. H. L. Franklin to his right eye."

On June 1, 1933, a hearing on the petition was had by the commission at which petitioner and his wife, Nalda Bee Howe, and Drs. H. L. Franklin, D. F.

Harbridge and W. A. Schwartz, eye specialists, T. T. Clohessy, skin specialist, and R. H. Palmer and C. N. Ploussard, general practitioners, testified; the testimony of the doctors being in explanation and amplification of the medical reports theretofore filed with the commission. On August 9, 1933, the commission rendered its decision, and found:

"That the evidence is insufficient to establish that any disability suffered (by petitioner) subsequent to February 11, 1932 is proximately the result of the injury sustained by him on October 23, 1931."

Petitioner filed a motion for a rehearing on the grounds: (1) That the evidence shows, with no contradiction, that the skin infection was due to the injection of the tetanus antitoxin, and that compensation therefor should have been paid after February 11, 1932; (2) that said skin disease grew worse after February 11, 1932, so that he was unable to follow any kind of occupation; (3) that there was no substantial proof that he had refused to follow treatment prescribed by the doctor or to accept hospitalization; (4) that the findings and award, to the effect that the infection of his eyes was not proximately caused by the injury of October 23, 1931, were not supported by the evidence. Other grounds were that some testimony was not admitted or taken, or, if taken, was incredible. These we do not consider. The commission adhered to its decision of August 9th, and the matter is before us on a writ of *certiorari*.

The evidence conclusively shows that the awards of February 9th and 11th were for and on account of the skin infection and not for the injury caused by the cut on petitioner's leg. We say this because he was never unable to work by reason of the cut. His inability to follow his occupation of farm laborer resulted from the serum inoculation, and this dis-

ability was very pronounced and progressive, beginning five days after the serum was administered and continuing up to the hearing on June 1, 1933, or at least it had not been cured, although at the last date it had somewhat improved.

The Industrial Commission ordinarily would have no right to stop paying compensation as long as the disability persisted. However, the last sentence in section 1438, Revised Code of Arizona 1928, provides that:

"No compensation shall be payable for the . . . disability of an employee . . . in so far as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent and reasonable surgical treatment or medical aid."

And section 1444, Id., provides that:

"The commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to such medical or surgical treatment as is reasonably essential to promote his recovery."

It was under this authority the commission discontinued compensation. We have read the testimony on the question, and think it shows petitioner did decline to accept hospitalization offered by the commission and to fully co-operate with his attending physician. The evidence is to the effect that the petitioner and his wife lived in an automobile camp; that the wife was away from home all day working at the state hospital as a nurse; that he was alone; that there was no toilet in their cabin. We think, considering the nature of his malady and the necessity for constant attention to prevent his scratching and rubbing his body and to apply the bandages and paste prescribed as a protection to the diseased skin, that the requirement that he go to a hospital was en-

tirely reasonable; and that the commission, for refusal by him to do so and to co-operate with his attending physician, very properly suspended payments of compensation.

But the evidence is undisputed that very soon after the order striking petitioner from the list of those entitled to compensation he went to the commission and offered to accept hospitalization and to co-operate in his treatment. Upon such offer petitioner should have been reinstated and compensation continued based upon the statutory percentage of the difference between his earning ability before his sickness and his ability afterwards.

The above statutory provisions evidently were intended to confer on the commission the power to deny or refuse compensation to a belligerent, obstreperous or unreasonable employee only during the time of his refusal or neglect to co-operate with the commission and his attending physician. When that which is required of him is reasonable, and he consents to it, from that time on his compensation should be restored, with reduction for aggravation, if any, on account of neglect or refusal to co-operate.

As before stated, the commission's award was on account of the skin disease, and could not have been given except on the theory that the proximate cause of the dermatitis was the serum put into his system to prevent lockjaw from the knife wound on his leg. While the expert testimony was in conflict as to whether the skin disease was caused by the serum, the commission decided it was, and that is final.

The commission's finding that petitioner's disability after February 11, 1932, was not the result of the injury of October 23d is clearly contrary to all the evidence. The skin disease was the result of the serum treatment, and such treatment was made necessary because of the knife wound. The awards

up to February 9th and 11th were for the skin disease.

Within three months after October 23d there began to form cataracts on both of petitioner's eyes. At the time of the hearing, the one on the right eye had been removed, and the one on the left was ripe for removal. It is strenuously contended by petitioner that the proximate cause of these cataracts was the antitetanus serum administered to him; in other words, that the same thing that caused the dermatitis caused the cataracts. The expert evidence was all directed to the establishment of this proposition or to the disproving of it. As laymen, we may have our beliefs or convictions as to which is right, but, where the experts disagree and the commission, the fact-finding body, decides in favor of one side, we will not disturb that finding but adopt it.

It would serve no useful purpose to set out in this opinion the testimony of the different doctors and their deductions therefrom. Suffice it to say that all of them except one were of the opinion that it was possible, but not probable, that the cataracts were caused by the serum. One was of the opinion that it was the cause. The commission's decision on this conflict was resolved against petitioner's contention, and we accept it as correct.

Because the Industrial Commission refused to further compensate the petitioner after his offer to go to the hospital for the disability occasioned by the skin disease, the award is hereby set aside.

LOCKWOOD and McALISTER, JJ., concur.