[Civil No. 3623. Filed September 30, 1935.]

[49 Pac. (2d) 1001.]

PATRICK McFADDEN, Petitioner, v. SIX COMPANIES, INC., a Corporation (Employer), and the INDUSTRIAL COMMISSION OF ARIZONA (Insurance Carrier), Respondents.

Messrs. Mathews & Wheeler, for Petitioner.

Messrs. Moore & Shimmel, for Respondent Six Companies, Inc., and Mr. A. R. Lynch, of Counsel.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondent Industrial Commission.

ROSS, J.—The petitioner, Patrick McFadden, being dissatisfied with the compensation awarded him for an industrial accidental injury, has brought the decision of the Industrial Commission here for review.

On January 10, 1934, at Boulder Dam, while working for Six Companies, Inc., muck or slush, consisting of dirt, cement, lime and perhaps sulphur, was splashed into his eyes. The treatment by the employer's local doctors was to wash the eyes and to apply to the left eye a pad. The right eye was but slightly hurt and needed no other medical attention. The treatment of washing the left eye and placing a pad over it was followed for several days or until about January 22d when petitioner was discharged by the local doctors as able to resume his work. These doctors were not eye specialists. Instead of going to work petitioner went to Phoenix and reported to the Industrial Commission, on February 8th. His eye at that time was inflamed and appeared to be in a very serious condition. The commission sent him to Doctor Schwartz, who, after consultation with Doctor Melton (both of Phoenix and both eye specialists), on February 8th undertook to treat his eye and

did so on that day and on the 9th, 10th, 11th and 12th, when he, without explanation and in disregard of instructions, failed to report for further treatment and returned to Boulder. At this time he requested the employer's agents to send him to a Doctor Osburn, the employer's eye specialist, of Los Angeles, but this request was refused.

He then placed himself under the charge of a doctor in Las Vegas, Nevada, of his own selection, who treated him, according to his statement, from February 22d to May 3d, with no perceptible improvement.

On March 27th the employer's eye specialist, Doctor Osburn of Los Angeles, was in Boulder and examined petitioner's eye and prescribed for it. Petitioner claimed the medicine did him no good.

Some time in September he returned to Phoenix and on September 8th was sent by his attorneys to Doctor Johnson and on the 22d by the Industrial Commission to Doctor Harbridge, both eye specialists. Doctor Harbridge treated his eye by removing the eye lashes, Doctor Johnson having agreed this was the proper thing to do. This was done on October 9th and gave immediate relief, but before he was discharged by Doctor Harbridge as cured he violated his instructions to return for further examination and care and left Phoenix. He did not return until October 18th, and then only after special request that he do so. On that date he was treated by Doctor Harbridge. He did not return for further treatment although requested to do so.

The diagnoses of petitioner's ailment were not in accord in all respects, but all the experts who examined him agreed that his eye was injured and that the cause of his pain was the inversion or turning against the eyeball of the lashes of the eyelid, caus-

ing the scratching of the eye, and, while one of the experts questioned if such condition was caused by industrial accident, it appears quite certain that it was, Doctor Harbridge said:

"All I can say is he had some injury and it seemed to be from trauma."

After an informal investigation of petitioner's case, on May 9, 1934, the Industrial Commission awarded him the sum of $104.43 for temporary disability, over the period from January 12 to February 12, 1934, but refused compensation after February 12th because of petitioner's refusal to submit to the medical treatment tendered him by the Industrial Commission and the employer. This award, no motion for rehearing having been made within the time allowed by law, became final and conclusive against petitioner up to the date of its rendition. *Kilpatrick* v. *Hotel Adams Co.*, 42 Ariz. 128, 22 Pac. (2d) 836; *Scott* v. *L. E. Dixon Co.*, 42 Ariz. 525, 27 Pac. (2d) 1109; *Muehlebach* v. *Dorris-Heyman Furniture Co.*, 43 Ariz. 526, 33 Pac. (2d) 339.

Later the commission reopened the case. A hearing was had on December 20th at which testimony of witnesses was submitted and thereafter, on January 11, 1935, the commission amended its award of May 9, 1934, by adding thereto as additional compensation the sum of $114.21, making a total allowance of $218.64. This award and the order overruling the application for a rehearing thereon are involved in this review.

The petitioner returned to the commission, after he summarily quit on February 12th the eye specialists who were treating his eye, and filed an application for a rearrangement and increase of the award of May 9th. This application was filed about September 14th, with the result above indicated.

There is a memorandum in the file indicating the increased award was estimated from September 14th to October 18th, the date he failed or refused to return to Doctor Harbridge for further treatment. The commission took the former date as the one on which application to rearrange or modify compensation was made. In other words petitioner, having again placed himself under the care of expert eye specialists furnished him by the commission, was allowed compensation from then on until October 18th, when he was last treated by Doctor Harbridge.

We have ruled that "No increase or rearrangement shall be operative for any period prior to application therefor." *Zagar* v. *Industrial Commission*, 40 Ariz. 479, 14 Pac. (2d) 472, 473. See, also, *Wise* v. *Six Companies, Inc.*, 43 Ariz. 24, 28 Pac. (2d) 1007.

A careful reading of the record discloses that petitioner was perhaps entitled to compensation for a longer period than was given. That, however, we cannot know because of his behavior. If he had co-operated with the physicians by following their prescriptions and advice, and by submitting his eye to frequent examinations and treatment, it is entirely probable the real cause of his pain and suffering would have been discovered sooner and removed. But, from the evidence, it appears he refused and failed to co-operate with his doctors. He was placed by the commission in the care of two well-known and skilled eye specialists on February 8th, and, unceremoniously and without leave and against the protests of the commission, left them after four or five treatments claiming they were doing him no good, whereas they report there was marked improvement in his eye the last time he was to see them. He even failed to report back to the eye specialist who found his trouble and removed it, although he had been requested to do so.

■■ When an employer or the Industrial Commission selects competent and skilled physicians for the injured employee he may not refuse to submit himself to examinations as often as requested by the commission or ignore the prescriptions of the doctors upon the ground that he is not getting the results expected. During the time he refuses to accept medical help the commission may suspend his compensation. Sections 1438 and 1444, Rev. Code 1928; *Howe v. Douglas,* 43 Ariz. 371, 31 Pac. (2d) 891.

If the commission, as it seems it did, applied this rule, we cannot say its action is unreasonable or unfair to petitioner under the circumstances.

It appears the employer sent petitioner to its hospital while he was at Boulder under treatment by its local doctors; also that it took care of the hospitalization he received in Phoenix while being treated by the several specialists there.

The award, we conclude, should be affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.