294 So.2d 160

**In re Eddie SCOTT**

v.

**ALABAMA MACHINERY AND
SUPPLY CO.**

**Ex parte Eddie Scott.**

**Civ. 261.**

Court of Civil Appeals of Alabama.

April 3, 1974.

Second Rehearing Denied May 1, 1974.

**460**

———◆———

George B. Azar, Montgomery, for petitioner.

Hill, Hill, Carter, Franco, Cole & Black and John M. Milling, Jr., Montgomery, for respondent.

## ON REHEARING

BRADLEY, Judge.

On rehearing, the original opinion in this case is withdrawn and the following is substituted therefor as the opinion of the court.

This is a workmen's compensation case.

Petitioner, Eddie Scott, filed an action against respondent, Alabama Machinery and Supply Company, in the Circuit Court of Montgomery County to recover benefits authorized by the workmen's compensation laws of Alabama, i. e., Title 26, Section 253 et seq., Code of Alabama 1940, as Recompiled 1958, and as amended. After trial without a jury, the court found Scott was temporarily totally disabled and was to receive all benefits authorized up to the date of trial and that all medical expenses

incurred up to that time be paid by respondent.

The trial court then ordered that Scott submit to an operation on his back or be deprived of further benefits. Scott then petitioned this court to issue a writ of certiorari to the Circuit Court. The petition was granted.

The assignments of error raise two issues: (1) that the trial court erred in finding that petitioner had to undergo further surgery on his back or lose any further benefits to which he might be entitled under the workmen's compensation law, and (2) that the trial court erred in finding that petitioner's condition could reasonably be expected to improve as a result of additional surgery.

The evidence in this case shows that Scott was employed by Alabama Machinery and Supply Company, that he was injured while on the job, and that his employer had notice of this injury. Scott suffered an injury to his back while lifting roofing materials. He was sent to Dr. Ashurst, who took x-rays, prescribed tablets, and administered injections. Following these procedures, Scott was seen by a chiropractor. When the patient continued to complain of pain and discomfort, he was referred to Dr. Miles who hospitalized him, did a myelogram, and then a laminectomy on the disc at the L5 level. The disc was opened and cleaned out. The recovery was good, and the patient was discharged from the hospital. Later the patient returned to Dr. Miles complaining of pain in his back and legs, and an inability to work. Dr. Miles prescribed various treatments, including physical therapy and exercises. When the results proved unfavorable, he advised another myelogram, which proved negative.

Scott continued to complain of pain in the back and legs, inability to twist or turn, headaches and chest pains and blurry vision. Dr. Miles sent him to a heart specialist, but this examination revealed nothing positive. Scott was told by the heart specialist that his trouble was due to his back. Because of Scott's apparent worsening condition, Dr. Miles referred him to Dr. Bostwick. At this time Dr. Miles stated that he believed that Scott's pain was somite rather than radicular. Somite pain comes from stretched or twisted ligaments or joints, whereas radicular pain results from a pinched nerve or a nerve root being pressed on. Dr. Miles also stated that he believed that some of Scott's problems were due to a psychic overlay, which involves a combination of pain, anxiety, and maybe unhappiness. However, Dr. Miles testified that because of the puzzling symptoms exhibited by Scott, he thought Scott should be seen by another doctor, and so he asked Dr. Bostwick to see Scott.

Dr. Bostwick saw and examined Scott, put him in the hospital and did a myelogram. The myelogram revealed a protrusion of the fourth and fifth lumbar discs. Dr. Miles said that Dr. Bostwick suggested to him and Mr. Scott that an exploratory laminectomy be performed. Dr. Miles said that he advised Scott to do what Dr. Bostwick recommended but said he understood that Scott refused to undergo surgery.

Dr. Miles considered that Scott had a sixteen per cent impairment of the whole body. He further stated that he could not recommend surgery unless Scott came to him and stated that he was useless as he was and to try something. The doctor said that if he did operate, he would look at the L4 and L5 discs because ninety-five percent of disc problems occur there. He also stated that he told his patients that ninety out of a hundred patients are satisfied with disc surgery; seven say they are better; and three say they are no better than before.

Dr. Bostwick said that the myelogram and the other x-rays showed that the L4 and L5 discs were defective and causing Scott's problems. He stated that in his opinion the pain was radicular in that a nerve was involved in the area of L5 and also L4. He further stated that his findings suggested surgery and he so advised

Scott. He said he could not guarantee success, as there are no guarantees in any surgery, but, in his opinion, the surgery would have a reasonable chance of helping Scott. As to percentages of success in this type of operation, Dr. Bostwick said that sixty to seventy percent have no return of difficulty, on recurrences twenty-five to thirty percent, and four percent will never get well. He further testified that if he were in Scott's condition he would have the surgery.

The applicable portion of the workmen's compensation law covering this situation is Title 26, Section 293, Code of Alabama 1940, as Recompiled 1958, and as amended, and is in part as follows:

" . . . If the injured employee refuses to comply with any reasonable request for examination or refuses to submit to medical and surgical treatment and attention, or refuses to accept the medical service which the employer elects to furnish under the provisions of this chapter his right to compensation shall be suspended, and no compensation shall be payable for the period of such refusal. . . ."

■ The Supreme Court has construed this statute to mean that there must be some reasonable expectation that the employee's condition will improve and that the operation required will be reasonably danger-free. Gulf States Steel Co. v. Cross, 214 Ala. 155, 106 So. 870. Also see Larson, The Law of Workmen's Compensation, Vol. 1, Sec. 13.22; 99 C.J.S. Workmen's Compensation § 319.

This court in Daniel Ornamental Iron Co., Inc. v. Black, 47 Ala.App. 608, 259 So.2d 291, said that the standard required by Section 293 is one of reasonableness, i. e., was the refusal to undergo medical or surgical treatment reasonable, and it was decided in that case that the refusal was unreasonable, but we also said:

" . . . If the evidence presented in a case were to indicate that treatment ex-tended would not remove or modify an existing disability, it would appear that refusal of such treatment would not be unreasonable, and denial of compensation would not be proper. . . ."

Again, we said in a more recent case, Avondale Mills, Inc. v. Tollison, 52 Ala. App. 52, 289 So.2d 621 (1974), that an employee had unreasonably refused to undergo surgery which could have the effect of lessening the disability and thereby the amount of compensation to be awarded.

■ The basis of the decision in the case at bar is that the petitioner had unreasonably refused, under the circumstances, to undergo the suggested surgery on his back. The reasonableness or unreasonableness of a surgical procedure is a question of fact for the trier of the facts —in this case the trial court. Profitt v. DeAtley-Overman, Inc., 86 Idaho 207, 384 P.2d 473.

■ As has been stated many times before, review in this court of a workmen's compensation case is by writ of certiorari to the trial court. B. F. Goodrich Co. v. Parker, 282 Ala. 151, 209 So.2d 647. Furthermore, the appellate court on such review is concerned only with whether there is any legal evidence to support the decision of the trial court. Tiger Motor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39. Although the medical testimony was to some degree in conflict, both Dr. Miles and Dr. Bostwick agreed that the surgery proposed should be performed on Scott. The chances of recovery, as stated by the doctors, ranged from sixty to ninety percent. Hence, it is obvious that the evidence is supportive of the trial court's findings and conclusions.

■ Petitioner contends that he was afraid to undergo the surgery suggested by the doctors, hence he should not be required to do so. While Scott testified that he was afraid to undergo the surgery, he never gave any reasons for his fear.

Subjective fear alone is not a reasonable basis for the refusal to submit to the surgery. Larson, *supra*. (Citing, Wasyluk v. Webb & Knapp, Inc., 12 A.D.2d 555, 206 N.Y.S.2d 683.) While the medical testimony here was that no surgery is absolutely danger-free, it did support the conclusion that the recommended surgery was reasonably free from danger, and, hence, not unreasonable.

█ The trial court's judgment provided that should petitioner refuse to submit to the surgery as ordered, his compensation benefits ". . . would be *terminated* as of April 9, 1973, . . . ." (Emphasis added.) We consider such language to mean that petitioner is forever barred from any further benefits should he refuse to submit to surgery within the time frame set out by the trial court. Such a determination is contrary to Section 293, *supra*, which controls the factual situation presented by the case at bar. Said section, in pertinent part, provides:

". . . If the injured employee refuses . . . to submit to . . . surgical treatment . . . *his right to compensation shall be suspended*, and no compensation shall be payable for the period of such refusal. . . ." (Emphasis added.)

Therefore, we conclude that petitioner's compensation benefits would not be terminated or forever barred as provided in the trial court's judgment, but only that his right thereto would be suspended until such time as he agrees to submit to the surgery. The trial court's judgment in this regard was in error.

█ Should petitioner now decide that he will undergo the ordered surgery, will he be entitled to any benefits during the period of refusal? We answer that question in the negative.

The statute controlling this situation, i. e., Section 293, *supra*, provides that, ". . . no compensation shall be payable for the period of such refusal.

. . . ." We construe such language to mean that if and when petitioner decides to submit to surgery on his back such benefits as he is then entitled to receive will on that day commence to flow to him. For the period from the day of refusal to submit to surgery, i. e., April 9, 1973, to the day of assent to surgery, petitioner will receive no benefits. The following cases appear to support this construction: Teems v. American Mutual Liability Ins. Co. et al., 41 Ga.App. 100, 151 S.E. 826; McFadden v. Six Companies, Inc. et al., 46 Ariz. 195, 49 P.2d 1001; Pritchard v. Ford Motor Co., 276 Mich. 246, 267 N.W. 622; Stump v. Norfolk Shipbuilding & Dry Dock Corp. et al., 187 Va. 932, 48 S.E.2d 209; Howe v. Douglas et al., 43 Ariz. 371, 31 P.2d 891.

That part of the trial court's judgment ordering petitioner to submit to surgery for the reason that it could reasonably be expected to improve his physical condition and reduce his permanent disability is affirmed; that part of the judgment terminating petitioner's compensation benefits for failure to submit to surgery is reversed and the cause is remanded for a judgment to be entered in conformity with this opinion.

Application for rehearing granted.

Affirmed in part; reversed in part and remanded.

WRIGHT, P. J., and HOLMES, J., concur.

## ON REHEARING

BRADLEY, Judge.

█ In its application for rehearing, the respondent argues that our decision has in effect created a new type of supervisory jurisdiction in the circuit courts concerning matters of workmen's compensation. We do not accept this premise. Our decision does not say that the trial court is to supervise this matter. The trial court is not called upon to do anything on its own ini-

tiative. Only when the circumstances causing suspension have changed and are brought to the attention of the court, or the condition continues to exist which caused the suspension and is brought to the court's attention, will the trial court be required to act; which means only that the action presently is *in fieri* until the circumstance causing it to be so is changed.

■ Applicant further asserts that we should impose a thirty day period in which the employee could submit to the surgery. There is no time limit prescribed in Title 26, Section 293 of the Alabama Code. Section 293 provides that payments will be suspended during the time of the refusal, nothing more. It is not the place of this court to draft into statutes arbitrary time limits when the legislature has not seen fit to do so. In interpreting a statute of this kind, we can be guided only by the standard of reasonableness, and the facts of each case will be determinative of that issue.

Opinion Extended.

Application for rehearing overruled.

WRIGHT, P. J., and HOLMES, J., concur.