This is a workmen's compensation case.
The evidence reveals the following pertinent facts. Thomas E. Reeves was employed by J.S. Walton and Company as a carpenter-foreman and had been so employed for a number of years. He has an eighth grade education and no skills other than as a carpenter and carpenters' foreman. These occupations have been his principal employment since adulthood. He was sixty years old at trial time.
On July 6, 1978, while standing in an excavation hole on a highway project being constructed by Walton and Company, Reeves was pinned to one bank of the hole by a front-end loader operated by another employee. His right leg was mangled and his left thigh was bruised and contused. Reeves was taken to a hospital where the right leg was amputated above the knee.
After being released from the hospital, Reeves's right leg was fitted with a prosthesis by an amputee clinic in Mobile.
Reeves testified that he must use a walking cane to assist him in walking when outside the house. He says he cannot lift heavy objects, that he cannot stand for any length of time because this causes the left *Page 701 
leg to swell and hurt and the stump to bleed and hurt, and that he cannot walk on uneven ground or in areas where there is a lot of debris without risking falling.
The medical testimony tended to show that Mr. Reeves could not bend or stoop to pick up objects, that walking would tire him and that after several hours of walking his back would hurt due to the physical effort involved in throwing his artificial leg around. Reeves is limited in the amount of turning and reaching he can do. He also cannot climb stairs or ladders. In addition there was medical evidence to the effect that Reeves, due to his age, education, training and occupation, was not employable or trainable. One of defendant's rehabilitation counselors stated that vocational rehabilitation for Reeves was not practicable.
Reeves filed an action against J.S. Walton and Company alleging that as a result of his job-related injury he was permanently and totally disabled and was unemployable as a carpenter. Defendant answered that plaintiff was well able to resume his job as a supervisor, that defendant would accept plaintiff as a carpenter supervisor with any reasonable medical restrictions but that plaintiff had refused its offer.
After an ore tenus hearing the trial court made several findings of fact. Included among them was a finding that plaintiff was permanently and totally incapacitated from working as a carpenters' foreman and he could not be retrained or rehabilitated for gainful employment and that defendant's offer to plaintiff of his old job at the same salary was properly rejected because plaintiff might be a hazard to himself and others if he resumed his old employment.
Defendant appeals and contends here that: (1) the trial court erred in finding that plaintiff was totally and permanently disabled and therefore unable to work when in fact defendant had offered him a job as a supervisor with any reasonable medical restrictions that might be imposed; (2) the trial court erred in refusing to suspend compensation payments to plaintiff for his refusal to undergo vocational rehabilitation; (3) the trial court erred in not restricting plaintiff's compensation to that provided in § 25-5-57 (a)(3)a for the loss of a leg; and (4) the trial court erred in not finding that plaintiff had taken an early retirement rather than engage in vocational rehabilitation. We will consider defendant's arguments in the order in which we have listed them.
Section 25-5-57 (a)(4)d of the 1975 Code of Alabama defines a permanent total disability as follows:
 any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment. . . .
We have construed this section of the 1975 Code to mean that an employee who suffers a physical injury as a result of an accident arising out of and in the course of his employment which permanently and totally incapacitates him from both working at his pre-injury trade or profession and being retrained for gainful employment in a new trade or profession commensurate with his education and post-injury physical limitations may be considered permanently and totally disabled under our workmen's compensation laws. See generallyDen-Tal-Eze Manufacturing Co. v. Gosa, Ala.Civ.App.,388 So.2d 1006 (1980). However, an employee whose disability results from such injury and who has refused to undergo physical or vocational rehabilitation shall not be deemed permanently and totally disabled. § 25-5-57 (a)(4)d, Code of Alabama 1975. Also, if an employee is receiving permanent total disability benefits and refuses to undergo vocational rehabilitation when requested by the employer, he shall lose his benefits during the period of refusal. § 25-5-77 (c) and (d), Code of Alabama 1975; see also Scott v. Alabama Machinery Supply Co.,52 Ala. App. 459, 294 So.2d 160 (1974).
As pointed out above, the trial court concluded that plaintiff was permanently and totally incapacitated from working as a carpenters' foreman and that he could not be *Page 702 
retrained for gainful employment. This conclusion must be upheld if there is any legal evidence to support it. See Hillv. J.P. Stevens Co., Ala.Civ.App., 360 So.2d 1035 (1978).
There is evidence in the record to support the trial court's conclusion that plaintiff could not work as a carpenters' foreman or as a supervisor of such foreman and that because of his age, education, mental attitude, and limited mobility he could not be retrained for gainful employment. Defendant says, however, that Reeves is not being asked to return to his old job doing the same thing he did before his injury. It is urged that the employer is willing to accept any reasonable medical restrictions placed on plaintiff's employment in order to obtain his services. The employer argues vigorously that, contrary to Reeves's belief, the job offer is not a sympathy gesture but is, in fact, a genuine offer of employment.
Plaintiff responds by pointing out his physical limitations and noting that he could not inspect the work of the carpenters under his control who would be building wooden forms for culverts and drainage ditches on highway construction projects. He said that he could not be a foreman and supervise workers under him if he could not inspect their work. He contends that the requirements of the job that defendant wants done are the same as before his injury. He would still be required to supervise the work of the carpenters on the job and he cannot do the job as it should be done with his limitations. The other evidence supports his contentions.
Also the medical evidence shows that Reeves will not be able to bend or stoop, nor can he walk safely on uneven ground or in areas where the surface is not smooth and free of obstacles that might cause him to trip and fall.
Based on the evidence in the record, we cannot say that the trial court erred in concluding that plaintiff could not work as a carpenters' foreman even under the relaxed working conditions that defendant suggested that it would be willing to accept.
Defendant's next contention is that the trial court erred in not finding that plaintiff's refusal to undergo vocational rehabilitation required suspension of the permanent total compensation benefits for each week of his refusal or deprived him of the right to be classified as permanently and totally disabled.
Section 25-5-57 (a)(4)d of the 1975 Alabama Code provides that an employee who may otherwise be considered permanently and totally disabled shall not be deemed to be so disabled if he refuses to undergo physical or vocational rehabilitation. In addition:
 If the employer so elects, the employee shall submit to and undergo vocational rehabilitation at the employer's expense through a vocational rehabilitation facility or institution recommended by a vocational rehabilitation specialist, which facility or institution shall be qualified to render competent vocational rehabilitation service. . . .
 . . . Refusal of the employee to accept rehabilitation at the employer's request shall result in loss of compensation for each week of the period of refusal.
Code of Alabama 1975, § 25-5-77 (c) and (d).
In the case at bar the evidence shows that plaintiff did submit himself to a vocational rehabilitation counselor employed by defendant and that counselor reported to defendant that plaintiff was not able to pursue productive employment and that vocational rehabilitation was not feasible. Also one of plaintiff's attending physicians testified that plaintiff was not trainable or employable considering his age, education, training and mobility and that to require him to submit to vocational rehabilitation would be demeaning and fruitless.
In Den-Tal-Eze Manufacturing Co. v. Gosa, supra, we said that the question whether an employee can be rehabilitated to another vocation is one of fact for the trial court. We believe the evidence is sufficient *Page 703 
to support the finding of the trial court that plaintiff could not be rehabilitated for another job.
Defendant also says that plaintiff refused to cooperate with its rehabilitation efforts. The evidence is in conflict as to plaintiff's efforts to be rehabilitated, and the weight of such evidence is not before us for resolution. See Horton v.DeLoach, 276 Ala. 357, 162 So.2d 453 (1964). However there is evidence in the record that plaintiff did cooperate fully with defendant's first rehabilitation expert and that person determined that rehabilitation for plaintiff would not be worthwhile. Furthermore, one of the doctors treating plaintiff said that to require plaintiff to undergo rehabilitation would be fruitless and demeaning. We find no error here.
Defendant's next contention is that the trial court erred by not limiting plaintiff's compensation to that provided in §25-5-57 (a)(3)a for the loss of a leg. Defendant says there is no proof that the effects of the loss of plaintiff's right leg produced a greater or more prolonged incapacity than would normally have resulted from the amputation; hence the compensation payable to plaintiff should have been limited to those benefits payable for loss of a scheduled member of the body.
Section 25-5-57 (a)(3)a provides that a permanent partial disability resulting from the loss of a leg shall be compensated by paying the employee sixty-six and two-thirds percent of his average weekly earnings for two hundred weeks. Section 25-5-57 (a)(3)g provides that in all other cases of permanent partial disability not enumerated in § 25-5-57
(a)(3)a the compensation shall be sixty-six and two-thirds percent of the difference between the average weekly earnings of the employee at the time of his injury and the average weekly earnings he is able to earn in his disabled condition. Our courts have held that even though there is an injury to a scheduled member, if the effects of that injury extend to other parts of the body and produce a greater or more prolonged incapacity than that which results from the specific injury, then the employee may recover the greater benefits allowed by subsection (a)(3)g for a permanent partial disability rather than be limited to the benefits allowed for a scheduled member.Unexcelled Manufacturing Corp. v. Ragland, 52 Ala. App. 57,289 So.2d 626 (1974).
In the case at bar the award of compensation was for a permanent total disability and the test therefor has consistently been not absolute helplessness or entire physical disability but inability to perform one's trade or inability to obtain gainful employment. Den-Tal-Eze Manufacturing Co. v.Gosa, supra. Furthermore the legislature, in § 25-5-57 (a)(4)d, has expanded the statutory definition of a permanent total disability to include "any physical injury . . . resulting from an accident, which injury . . . permanently and totally incapacitates the employee from working at and being retrained for gainful employment."
The evidence fully supports the trial court's finding that Reeves was permanently and totally disabled from working at his trade of carpenters' foreman and being retrained for gainful employment. Moreover, the court was not limited in its finding to a permanent partial disability for the loss of a scheduled member in view of the evidence before it.
Defendant's final contention is that the trial court committed error when it refused to find that plaintiff had chosen to forego vocational rehabilitation in favor of early retirement. We find no such error.
The only evidence in the record relating to retirement resulted from questions asked of plaintiff by defendant's counsel about whether he had been planning to retire, and plaintiff replied, "Well, don't we all work for that?" Plaintiff mentioned that he might want to retire but never said when that would be. The trial court could have reasonably concluded from this evidence *Page 704 
that plaintiff's talk of retirement was no more than wishful thinking by a man who had worked most of his life and was approaching the age when he would be eligible for Social Security. It is clear from the evidence that plaintiff made no overt effort to retire. As the evidence further shows, plaintiff was a loyal employee who was very diligent in his work habits.
Based on the evidence we cannot say that the trial court committed reversible error by not finding that plaintiff had refused vocational rehabilitation in favor of retirement.
For the reasons above noted, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 1037