533 So.2d 628 (1988)
LEWIS G. REED & SONS, INC.
v.
John A. WIMBLEY, Jr.
Civ. 6370.
Court of Civil Appeals of Alabama.
July 13, 1988.
Rehearing Granted in Part, Denied in Part October 12, 1988.
*629 Michael Gillion, Michael P. Windhom, and Weyman W. McCranie, Jr. of Brown, Hudgens, Richardson, Mobile, for appellant.
Edward P. Turner, Jr., and Gordon K. Howell of Turner, Onderdonk & Kimbrough, Chatom, for appellee.
INGRAM, Judge.
The trial court awarded temporary total disability benefits up to the date of maximum medical improvement and permanent total disability benefits thereafter. The trial court also ordered payment of a lump sum of 15 percent of the total compensation award as an attorney's fee. The employer appeals from both aspects of the judgment.
John A. Wimbley, Jr., was employed by Lewis G. Reed & Sons (employer) as a house mover. On October 11, 1985, Wimbley sustained a Lisfranc's fracture of his right foot in the course of his employment, when a large steel beam fell on his foot. X-rays did not reveal the fracture until eleven days after the accident, at which time Wimbley underwent surgery on his foot. The employer paid Wimbley temporary total disability benefits from the date of the accident through March 31, 1986, and paid all medical expenses incurred on account of the injury.
Wimbley's treating physician released him to return to work on March 31, 1986, with a "15% permanent partial disability" of his right foot. At that time, Wimbley attempted to resume his duties as a house mover. However, pain and swelling in his foot prevented Wimbley from staying on the job. The employer refused to pay any workmen's compensation benefits after March 31, 1986. This lawsuit followed.
In September 1986, Wimbley's treating physician reported Wimbley was still having a lot of problems with his foot and had been unable to return to work. He referred Wimbley to another doctor. Two weeks later, that doctor reported Wimbley had developed degenerative arthritis as a result of his injury. He too stated Wimbley was unable to work at that time.
After the filing of suit but prior to trial, the employer tendered to Wimbley two checks representing back payments for temporary total disability benefits from March 31, 1986, through February 11, 1987. Trial was had ore tenus on March 24, 1987. The trial court made extensive findings of fact and entered judgment for the plaintiff (Wimbley). The employer then brought this appeal.
The standard of review in workmen's compensation cases is limited to questions *630 of law and examination of the evidence to determine if any legal evidence supports the trial court's findings. Michael v. Bruno's Food Stores, Inc., 506 So.2d 342 (Ala. Civ.App.1986). If there is any legal evidence to support the trial court's findings, we must affirm. Washington v. Warrior Tractor & Equipment Co., 487 So.2d 1371 (Ala.Civ.App.1986).
The employer first contends the trial court erred in concluding Wimbley's refusal to undergo further surgery on his foot was reasonable. Alabama Code 1975, § 25-5-77(b), provides in pertinent part:
"If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical service or physical rehabilitation which the employer elects to furnish under the provisions of this chapter, his right to compensation shall be suspended and no compensation shall be payable for the period of such refusal."
Ala.Code 1975, § 25-5-77(b). The purpose of this provision is to prevent malingering by one drawing compensation or to determine if the claimed injury is real, reparable, or capable of being minimized. Misco, Inc. v. Driver, 50 Ala.App. 256, 278 So.2d 374 (1973). The employer claims Wimbley's injury is reparable by surgery and Wimbley's refusal to submit to such surgery relieves the employer of liability for workmen's compensation benefits.
While an employee's subjective fear alone is not a proper basis for refusal of proposed medical treatment, § 25-5-77(b) will not preclude an award of workmen's compensation benefits unless (1) there is a reasonable expectation that the employee's condition will improve as a result of the treatment and (2) the treatment is reasonably danger free. Elbert Greeson Hosiery Mills, Inc. v. Ivey, 472 So.2d 1049 (Ala.Civ.App.1985). If the employee's refusal to undergo proposed medical or surgical treatment is reasonable, his workmen's compensation benefits may not be terminated on the basis of § 25-5-77(b). Scott v. Alabama Machinery & Supply Co., 52 Ala.App. 459, 294 So.2d 160 (1974).
In the case at bar, the trial court found Wimbley's refusal to submit to the proposed foot surgery was not unreasonable. Legal evidence supports this finding. The doctor who proposed the surgery told Wimbley it would probably relieve some of his pain but he would not be able to return to heavy labor even after the surgery. The doctor also testified on deposition that the surgery (a bone fusion) was not minor and that there was some danger of making the pain worse. The surgery would require up to three months in a cast. The doctor would not know whether the surgery had been successful for about six months.
The trial court determined the success of the proposed surgery was not reasonably assured and there was no reasonable certainty that Wimbley's condition would improve as a result. The reasonableness of a surgical procedure is a question for the trier of fact, in this case the trial judge. Scott, supra, 52 Ala.App. at 462, 294 So.2d at 163. There was other evidence presented by the employer that the success of the surgery was virtually assured and Wimbley's refusal was based on his subjective fear. However, under our limited standard of review, we find ample legal evidence to support the trial court's finding that Wimbley's refusal of surgery was reasonable. Elbert Greeson Hosiery Mills, Inc., supra, at 1051.
The employer's second contention is that Wimbley has not yet reached maximum medical improvement because he has not yet undergone the proposed foot surgery. Having found evidence to support the trial court's finding that Wimbley's refusal to submit to the surgery was reasonable, we find no merit in this contention. Obviously, if Wimbley's refusal to undergo the surgery was reasonable, he cannot be forced to submit to surgery merely so he can reach maximum medical improvement. An employee must reach maximum medical improvement before a court may award permanent total disability benefits. Alabama By-Products Corp. v. Lolley, 506 So.2d 343 (Ala.Civ.App.1987). The evidence was undisputed that Wimbley had improved to the greatest extent possible *631 absent the surgery. Therefore, the trial court properly found Wimbley had reached maximum medical improvement and awarded permanent total disability benefits.
The employer also asserts the award of permanent total disability benefits is erroneous because it is unsupported by the evidence. We disagree. Total and permanent disability does not mean absolute helplessness or entire physical disability. Instead, it is defined as the inability to perform one's trade or the inability to obtain reasonable gainful employment. Bradley v. Nelson, 507 So.2d 958 (Ala.Civ. App.1987); Bankhead Forest Industries, Inc. v. Lovett, 423 So.2d 899 (Ala.Civ.App. 1982). Wimbley's physician felt he had a 15 percent permanent impairment of the right foot. However, the percentage of physical impairment is not the same as the percentage of disability. Stebbins Engineering & Manufacturing v. White, 457 So.2d 425 (Ala.Civ.App.1984) (15 percent physical impairment supported finding of permanent total disability). In fact, a trial court can find total permanent disability without any medical testimony as to physical disability. Bankhead Forest Industries, supra, at 900.
The evidence showed Wimbley is 36 years old, is functionally illiterate, and has performed heavy manual labor all his adult life. He has no work skills. Taking all these factors into consideration, a vocational expert testified Wimbley is 100 percent unemployable and cannot perform the physical tasks of any job he is qualified for. The trial court thus had adequate evidence upon which to base its finding of total and permanent disability. Stebbins Engineering & Manufacturing, supra, at 427.
As to the trial court's award of attorney's fees, the employer requests us to reconsider the line of cases beginning with Ashland Chemical Co. v. Watkins, 435 So.2d 1301 (Ala.Civ.App.1983). Ashland Chemical and its progeny allow the trial court to award a lump sum attorney's fee to be paid up front and deducted from the back end of the benefits due when the court finds total permanent disability in a workmen's compensation case. Topline Retreads of Decatur, Inc. v. Moore, 484 So.2d 1090 (Ala.Civ.App.1985). As we stated in Transco Energy Co. v. Tyson, 497 So.2d 184 (Ala.Civ.App.1986), our authority to overrule Ashland Chemical is far from clear, in light of several denials of certiorari by the supreme court in similar cases. Even if we were convinced we have such authority, we have no inclination to overrule Ashland Chemical, as we still deem it fair and just. Transco Energy, supra, at 187.
Finally, the employer contends the trial court's calculation of the benefits award is erroneous in two respects. The trial court found Wimbley's average weekly wage was $215, including $160 for salary, $30 a week for gas, and $25 a week for meals. There was conflicting testimony as to whether the money for gas and meals should be included in Wimbley's average weekly wage. When testimony is in conflict, the trial court's findings are conclusive. Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App.1985). We therefore must affirm the trial court's finding that Wimbley's average weekly wage was $215.
The employer also argues the court erred in failing to give it credit for $4,376.58 of back payments it tendered to Wimbley in February 1987. However, the evidence was undisputed that Wimbley never cashed these drafts because they were based on an incorrect average weekly wage calculation. In fact, Wimbley introduced the uncashed drafts as evidence at trial. The employer tendered the drafts to Wimbley some four months after the complaint was filed and only after taking the deposition of one of Wimbley's treating physicians. The court took note of these drafts in its findings of fact but did not credit them against the judgment. The employer now contends the court should reduce the award of benefits and return the uncashed drafts to Wimbley. The uncashed drafts should be returned to the employer, but otherwise no credit against the judgment would be necessary. Apparently, the employer believes the $4,376.58 should not be considered as part of the "compensation awarded" and, therefore, that no attorney's fee should be *632 paid out of this money. See Ala.Code 1975, § 25-5-90.
The trial court found that Wimbley reached maximum medical improvement on November 28, 1986, and that he was entitled to temporary total disability benefits from March 31, 1986, through November 28, 1986, in the amount of $4,959.23. The trial court awarded Wimbley $7,166.50 permanent total disability benefits from November 28, 1986, to November 13, 1987. It appears to us that the temporary total disability benefits and the permanent total disability benefits were based upon the average weekly wage found by the trial court to be $215.00. The principal thrust of the employer's argument on this point seems to be that the trial court erred in calculating Wimbley's attorney's fee on a judgment which failed to give "credit" for the amount of the uncashed drafts. We disagree and point out that whether the trial court orders the uncashed drafts returned to Wimbley or orders a new payment based on the correct average weekly wage calculation, the $4,376.58 would be a part of the "compensation awarded" for purposes of the award of attorney's fees pursuant to § 25-5-90. Either method involves an award of benefits by the trial court. We therefore find no error in the method of awarding benefits used by the trial court. We add, for purposes of clarification, that the employer can, of course, avoid double payment by simply cancelling the uncashed drafts. We also point out that the attorney's fee is deducted from the benefits awarded the employee and the employer has no standing to challenge such award on appeal. Hardin's Bakery, Inc. v. Higgins, 480 So.2d 1252 (Ala.Civ.App.1985).
The limited scope of review in workmen's compensation cases mandates that we affirm the trial court's findings if we find any legal evidence to support those findings. Southern Prestressed Concrete, Inc. v. Thomas, 485 So.2d 772 (Ala.Civ. App.1986). Having found legal evidence to support the trial court's findings in the case at bar, we must affirm the judgment.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.

ON APPLICATION FOR REHEARING
PER CURIAM.
This case was originally decided on July 13, 1988. On July 15, 1988 the Supreme Court of Alabama decided Ex parte St. Regis Corp., 535 So.2d 160 (Ala.1988) and held that it was error to award a lump-sum attorney's fee in a total and permanent disability case without reducing the fee award to present value. In its application for rehearing, Lewis G. Reed & Sons in part contends this case should be reversed and remanded for recalculation of the attorney's fee and the weekly benefit award in accordance with St. Regis. We agree.
In the case sub judice, the trial court failed to commute the attorney's fee to present value. Because the case was still in the appellate process of this court without a vested judgment at the time St. Regis was decided, we consider it appropriate to apply St. Regis. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988). Therefore, we grant the application for rehearing and remand the case for determination of the fee and the weekly benefits award in accordance with the guidelines of St. Regis. In all other aspects, the application for rehearing is denied.
APPLICATION FOR REHEARING GRANTED IN PART, OVERRULED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.
BRADLEY, P.J., and HOLMES, J., concur.
INGRAM, J., dissents.
INGRAM, Judge (dissenting):
I respectfully dissent from the majority's application of Ex parte St. Regis, 535 So.2d 160 (Ala.1988), to the case before us for rehearing. It is my view that Ex parte St. *633 Regis should not be given such retroactive effect as to alter a judgment of the trial court which was based upon established law at that time. I would hold that St. Regis would apply only to those cases in which judgment was not rendered at the trial court level until after July 15, 1988.